624 A.2d 710

**JOY TECHNOLOGIES, INC., Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL
BOARD (HEETER), Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 1, 1993.

Decided April 12, 1993.

Michael A. Fetzner, for petitioner.

Daniel K. Bricmont, for respondent.

Before PELLEGRINI and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Joy Technologies (Employer) appeals from an order of the Workmen's Compensation Appeal Board (Board) which affirmed in part, and reversed in part, the referee's decision modifying William B. Heeter's (Claimant) workmen's compensation benefits.

Employer employed Claimant as a grinder. On February 21, 1980, Claimant sustained a work-related injury to his left groin and upper left leg. Except for brief periods of employ-

ment for Employer, Claimant has remained totally disabled and continues to receive workmen's compensation benefits.

In 1986, Employer filed a petition to suspend or modify Claimant's benefits, asserting that Claimant was no longer totally disabled. Employer claimed Claimant had returned to work, operating a campground business that he owned with other family members. At the referee's hearing, Claimant testified to limited employment duties with regard to the campground, for which he received no remuneration in the form of wages or profits. Claimant testified that Claimant's sons and son-in-law, who were Claimant's partners in the campground venture, did most of the work and drew weekly salaries.[1] Claimant's tax returns reflected operating profits for 1983 and 1985–1987. (Claimant had no net earnings from the campground business in 1984.) In 1987, Claimant sold his interest to a Mr. and Mrs. O'Meara.

The referee found that the operating profit from the campground could be partially allocated to Claimant as earnings, so as to justify a modification of his benefits to partial disability status, over the period of time that Claimant had an interest in the campground. As a result, the referee directed Employer to reduce Claimant's future disability payments by $10.00 per week for a period of 111.5 weeks to correct the overpayment. Because Claimant eventually sold the campground, the referee also considered Claimant's profits from the sale. The referee concluded that these profits could not be allocated to Claimant as earnings and directed Employer to reinstate Claimant's total disability status, contemporaneous with the sale of the campground.

Both sides appealed the referee's decision. The Board reversed the referee's finding that operating profits from the campground business could be credited to the Claimant as earnings, and disallowed Employer the corresponding reduction in Claimant's future disability payments. The Board affirmed the referee's other findings.

1. Although the partnership owned the campground business, the real estate was titled only in Claimant's name.

Employer appeals to this Court,[2] arguing: (1) that the Board erred in reversing the referee because, substantial evidence existed to support the referee's modification of Claimant's benefits from total to partial disability, based on Claimant's operating profits from the campground; and (2) that both the Board and the referee erred in ignoring substantial evidence that Claimant had voluntarily withdrawn from the labor market.

 Employer petitioned for modification of Claimant's benefits pursuant to Section 413 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 772, which allows modification of benefits upon proof that the disability of an injured employee has decreased or ceased to exist. Employer contends that Claimant's activity in conjunction with the campground, proved Claimant physically capable of working, and that Claimant had, in fact, returned to work. Employer asserts an entitlement to modification of Claimant's benefits, based upon Claimant's profits from the operation and sale of the campground, which Employer claims are earnings. Generally profits from a business will not be considered as earnings within the meaning of the Act, and cannot be accepted as a measure of loss of earning power, unless they are almost entirely attributable to the claimant's personal management and endeavor of the business. *Fruehauf Corp. v. Workmen's Compensation Appeal Board (Michaels),* 126 Pa.Commonwealth Ct. 298, 559 A.2d 609 (1989).

In *Fruehauf,* claimant testified that he only assisted his sons and wife in running a family farm. This Court, therefore, found evidence that claimant's farm produced a yearly profit, insufficient to support the grant of a modification petition. Similarly, in *Clingan v. Fairchance Lumber Co.,* 166 Pa.Superior Ct. 331, 71 A.2d 839 (1950), claimant assisted in his grocery store business, but the Superior Court found that

2. Our scope of review is limited to a determination of whether constitutional rights have been violated, whether the adjudication was in accordance with law and whether the referee's findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

claimant's family operated the store, with claimant acting only as nominal manager. As a result, the court concluded that profits earned by the grocery store could not be attributed to claimant as earnings.

■ Here, the Board found Claimant's duties were nominal, and that Claimant's family truly operated the campground on a day-to-day basis. Based on the holdings of *Fruehauf* and *Clingan,* we hold that substantial evidence supports the Board's finding, that Claimant's profits from the campground were not derived almost entirely as the *direct result* of Claimant's personal management and endeavor. Therefore, Claimant's operating and sale profits from the campground do not constitute "earnings" within the meaning of the Act.

■ Next, Employer argues that Claimant voluntarily removed himself from the labor market. As evidence of this, Employer points to Claimant's sale of the campground, collection of pension benefits and Claimant's admission that he had not looked for work since he sold the campground. The Supreme Court's decision in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 532 A.2d 374 (1987), requires that before an employer is entitled to suspend benefits, employer must prove that claimant's disability has ceased, or that there is work available within claimant's limitations. However, when a claimant makes an *unequivocal statement* that he has no intention of pursuing employment, employer may consider this a voluntary withdrawal from the labor market, and need not prove work availability, in order to suspend payment of benefits. *Dugan v. Workmen's Compensation Appeal Board (Fuller Co.),* 131 Pa.Commonwealth Ct. 218, 569 A.2d 1038 (1990).

In *Dugan,* the claimant stated unequivocally, "I am retired." *Id.* at 221, 569 A.2d at 1040. Here, Claimant made no such unequivocal statement.

Q. ... At the time you sold the campground, was it your intention to retire from any other work?

A. Oh, no. I never said that. I would certainly like to be back to work, if I was able.

(163a.)

In *Schmidt v. Workmen's Compensation Appeal Board (Fetch)*, 140 Pa.Commonwealth Ct. 590, 594 A.2d 812 (1991), we held a claimant's receipt of pension benefits, coupled with equivocal statements as to whether claimant had retired, did not bring claimant into the purview of *Dugan*. We further held, that where *Dugan* does not apply, Employer bears the burden, under *Kachinski*, of proving the availability of work within claimant's range of limitations. In the case before us, the referee concluded that Claimant had not voluntarily withdrawn from the job market within the meaning of *Dugan*. The referee further found Claimant willing to engage in employment within his limitations, but that Employer had not established any job availability. Because substantial evidence exists to support the referee's finding, we hold that Employer has not met its burden under *Kachinski* and may not modify Claimant's total disability benefits.

Accordingly, we affirm the order of the Workmen's Compensation Appeal Board.

## ORDER

AND NOW, this 12th day of April, 1993, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. I believe Claimant returned to work and was not entitled to benefits pursuant to Section 413 of the Workmen's Compensation Act, 77 P.S. § 772.

Claimant was injured at work in 1980 and was receiving workmen's compensation benefits when he purchased the Deer Meadows Campground in 1983. Claimant subsequently sold the campground in 1987 for a large profit. The Referee found that Claimant was not entitled to disability benefits during the four years that he owned the campground because he made

profits during that time which were almost entirely attributable to his personal endeavors. The Board reversed, finding that any profit derived was the result of a capital investment and the labor of Claimant's sons.

I would reverse the Board's decision because the evidence of record indicates not only that Claimant was responsible for running the entire business, but he received compensation from the business, in addition to that which he received for his disability.

The profits received annually from the business were almost entirely the result of Claimant's personal management of the campground. Although Claimant stated that he did very little physical labor, he testified that his primary duty related to the campground was supervising or managing the entire operation on a day-to-day basis. Claimant testified twice that he supervised the operation of the campground eight to ten hours per day, seven days a week, for a total of approximately seventy hours per week. (Notes of Testimony at 59a and 166a.) Additionally, while Claimant did not perform heavy physical labor, he stated that he coordinated activities for the campers, worked in the general store, made purchases for the store, cut the lawns, filled propane tanks for campers and sold firewood.

Merely because Claimant testified that he received no compensation from running the campground because he did not accept a salary does not mean that he did not receive value for his work. Claimant lived on the campground in a mobile home from May 1 through October 31 free of charge. He invested $94,000 of the profits from the operation of the campground in relocating the miniature golf course and building a swimming pool, thereby deferring his income. This deferral was realized when Claimant sold the campground for $825,000 in 1987, which he purchased in 1983 for $225,000, realizing a profit of $600,000. That profit also represents substantial compensation to Claimant that should be credited against the amount of workmen's compensation he received during that period. Such a profit cannot merely be considered the fruits of a capital investment, because it is the result of

Claimant's substantial efforts in running the campground and making such a profit possible.

Accordingly, I respectfully dissent and would reinstate the decision of the Referee.