U.S. AIRWAYS and Reliance National, c/o Sedgewick Claims National Services, Petitioners,

v.

**WORKERS' COMPENSATION APPEAL BOARD (DIXON), Respondent.**

**Glenda Dixon, Petitioner,**

v.

**Workers' Compensation Appeal Board (U.S. Air Reservation Group), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 25, 2000.
Decided Nov. 15, 2000.
Reargument Denied Jan. 24, 2001.

Kimberly A. Zabroski, Pittsburgh, for petitioners, US Airways and Reliance National.

John K. Greiner, Greensburg, for respondent, G. Dixon.

BEFORE: McGINLEY, Judge, FRIEDMAN, Judge, MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

U.S. Airways (Employer) and its insurance carrier appeal from the order of the Workers' Compensation Appeal Board (Board) that affirmed, as modified, the decision of the workers' compensation judge (WCJ) awarding Glenda Dixon (Claimant) total and partial disability benefits for a closed period and suspending her benefits thereafter. Claimant also filed a cross-appeal from the Board's decision.[1]

On appeal, we are asked to determine (1) whether Claimant established that she sustained an injury in the course of her employment; (2) whether the WCJ's decision to suspend Claimant's benefits is supported by the record; and (3) whether Claimant's benefits may be suspended based on her acceptance of a severance package offered by Employer as part of its reorganization plan. We affirm the order of the Board to the extent that it affirmed the WCJ's grant of total and partial disability benefits for the closed period; vacate the order affirming the WCJ's suspension of Claimant's benefits as modified; and remand this matter to the WCJ to determine if and when Claimant's benefits should be suspended.

## I.

Claimant was employed as a unit supervisor at Employer's Reservations Service which occupied the fifth floor of Building Seven, Parkway Center (Parkway Center) located in Pittsburgh, Pennsylvania. On November 27, 1996, a day before Thanksgiving Day, Claimant sustained an injury when she slipped and fell on the wet tile floor in the first floor hallway of the Parkway Center between the lobby area and a Chinese restaurant located at the rear corner of the first floor. At the time of the injury, Claimant was returning to her office on the fifth floor of the building after picking up takeout lunch from the Chinese restaurant.

On June 17, 1997, Claimant filed a claim petition, alleging that she sustained a work-related injury in the nature of contusions, strain and sprain of buttocks, a back injury, sciatica pelvic trauma, S–1 radiculitis and myofascial pain syndrome. In its answer, Employer denied Claimant's allegations and asserted, *inter alia*, that Claimant did not sustain the injury in the course of her employment.

To support the claim petition, Claimant testified as follows at hearings held before the WCJ. As the unit supervisor, which is the first level management position, Claimant was responsible for overseeing and monitoring activities of fifteen to twenty reservation agents, keeping track of their payroll and time record, serving on work teams when necessary, and attending management classes. She usually worked in the dayshift for ten to twelve hours a day, five days a week. As the unit supervisor, Claimant was expected to be present and visible in the office during the entire shift to assist the agents and handle any problems they may encounter.

1. This Court sua sponte consolidated the appeals by order dated May 31, 2000.

Due to the nature of the operation of the Reservations Service, the supervisors did not have a fixed schedule for lunch break. Moreover, under Employer's policy the supervisors were prohibited from leaving the building for lunch break, if no other supervisor was on duty on a particular day. There was a lunchroom on the fifth floor of the building occupied by the Reservations Service, but Employer did not operate a cafeteria or a dining facility in the building. When the supervisors could not take regular lunch break due to their work schedule or work load, they were permitted to order takeout lunch from one of two restaurants located on the first floor of the building and continue to work or be available to assist the agents, while eating lunch in the lunch room.

On November 27, 1996, the rainy day before Thanksgiving, Claimant was busy at work because of the approaching holidays. Claimant decided to continue to work without taking lunch break because she had some pressing matters on her desk needed to be taken care of over the noon hour. After asking her coworker if she wanted to order lunch, Claimant called the Chinese restaurant on the first floor of the building and ordered takeout food. Claimant then went down to the first floor to pick up the ordered food. After getting off the elevator in the lobby of the first floor, she walked down a long hallway, turned right at the end of the hallway and then went through a small open doorway to reach the Chinese restaurant.

After picking up the takeout lunch, Claimant began walking toward the elevator in the lobby to return to her office. Claimant then slipped and fell on the wet tile floor in the hallway, landing directly onto her left buttock. After the fall, Claimant immediately experienced pain. Upon her return to her office, she could not eat lunch due to the pain. Later that day, Employer's office manager filled out an occupational injury report with Claimant. Despite the sharp pain in her buttocks radiating down her legs to her toes, Claimant continued to work until December 2, 1996. On December 3, 1996, Claimant saw her physician, Nathan Bennett, M.D., who stated in the medical report given to Employer that she was not able to return to work due to the injury. Claimant was thereafter treated by Dr. Bennett and other physicians.

On February 18, 1997, Claimant returned to work on a part-time basis working for four hours a day, five days a week. Claimant's condition worsened after her return to work, and she stopped working on April 14, 1997 after seeing Dr. Bennett and continued to receive medical treatment thereafter. At that time, Employer was in the process of reorganization. On May 31, 1997, Claimant decided to accept a severance package offered by Employer as part of its reorganization plan and received severance benefits in the amount of $26,052.01. As of the hearing on August 26, 1997, Claimant was forty-three years old.

After leaving her employment with Employer, Claimant began working at a craft store opened by her husband on February 25, 1997 and jointly owned by her and her husband. Her activities at the store were very limited and did not involve lifting or a lot of bending. She could stand and sit as she chose. Claimant worked at the store for up to sixteen hours a week at first and up to twenty hours a week by October 1997. The business did not generate any profits, and Claimant and her husband did not draw any compensation from the business. Claimant's husband testified corroborating Claimant's testimony regarding her limited activities at the store.[2] He testified that Claimant could no longer do household chores or enjoy active lifestyle after the work injury.

2. Employer states in its reply brief that the craft store operated by Claimant's husband

has since been closed.

Claimant also presented the medical reports of her treating physicians. In the medical report dated January 5, 1998, Dr. Bennett opined that Claimant suffered from acute sciatica as a result of her November 27, 1996 fall; she was completely disabled from December 3, 1996 until her return to work on February 18, 1997 on the part-time basis, and from April 14, 1997 until May 31, 1997; and she was thereafter able to work as the retail clerk at the family-owned store on a very limited basis for fifteen to twenty-eight hours a week. In the report dated September 29, 1997, Richard A. Weisman, M.D., a neurosurgeon, stated that at the time of his examination of Claimant on October 6, 1997, Claimant had pain in her lower back and left sciatic distribution when bending forty-five degrees, some spasms in the paravertebral muscles, weakness of her left exterior hallicis longus and symptoms of left L–5 radiculopathy. Dr. Weisman opined that Claimant's conditions were directly related to her work injury on November 27, 1996 and that she had not reached a maximum medical improvement.

In opposition to the claim petition, Employer presented the testimony of Sandy Thomas, the reservation sales manager and Claimant's supervisor, and Michelle Tegge, the unit supervisor. They testified that although the supervisors did not have a fixed lunch schedule due to the nature of the office operation, they were encouraged to take lunch break for up to one hour, and that each supervisor decided how to cover the operation during their lunch break. Their testimony was in most part consistent with Claimant's testimony regarding Employer's policy governing the supervisors' lunch schedule and the operation of the office during their lunch break. Employer did not present any medical testimony.

The WCJ accepted the testimony of Claimant and her medical witnesses as credible. The WCJ also found the testimony of Employer's witnesses credible to the extent that it was consistent with Claimant's testimony. The WCJ concluded that Claimant sustained the injury while actually furthering Employer's business. The WCJ also concluded that Claimant's injury arose in the course of employment because her injury was caused by the wet condition of the building or the common area leased, occupied and controlled by Employer, and because she was required to be in that area of the building at the time of the injury.

The WCJ awarded Claimant total disability benefits in the maximum weekly compensation rate of $527 from December 3, 1996 to February 17, 1997 and weekly partial disability benefits in the amount of $296.19 from February 18, 1997 to April 14, 1997, giving Employer a credit for $26,052.01 paid her as severance benefits. The WCJ then suspended her benefits as of April 14, 1997,[3] stating that "there is no evidence of continued wage loss due to disability" after that date. WCJ's Findings of Fact No. 34. Both Claimant and Employer appealed the WCJ's decision to the Board.

On appeal, the Board affirmed the WCJ's decision awarding Claimant total and partial disability benefits for the closed period, concluding that she sus-

---

**3.** The WCJ stated in the order that Claimant is entitled to partial disability benefits from February 18, 1997 through April 14, *1998* and that her benefits should be suspended as of April 14, *1998*. The WCJ also stated in Findings of Fact No. 34 that Claimant is entitled to partial disability benefits from February 17, 1997 to April 14, *1998*. However, the record clearly shows that the WCJ intended to award Claimant partial disability benefits until April 14, 1997, not 1998 and suspend her benefits as of that date. The WCJ accepted the testi-mony of Claimant and Dr. Bennett that Claimant stopped working on April 14, 1997 due to the persistent pain after she returned to work on the part-time basis. In Findings of Fact No. 27, the WCJ found that Claimant was entitled to partial disability benefits from February 18, 1997 through April 14, 1997. Thus, it is apparent that the discrepancies in the WCJ's decision regarding the effective date of suspension of Claimant's benefits were caused by the WCJ's inadvertence or typos.

tained the injury in the course of her employment. The Board then modified the effective date of suspension of Claimant's benefits to May 31, 1997, the date of her acceptance of the severance package offered by Employer, stating that her loss of earnings after May 31, 1997 was caused by her voluntary withdrawal from employment with Employer, not by the work injury.[4] Employer appealed the Board's decision to this Court, contending that Claimant did not sustain the injury in the course of her employment. Claimant also filed a cross-appeal, challenging the suspension of her benefits.

## II.

■ An employee's injury is compensable under Section 301(c)(1) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1), if the injury (1) arises in the course of employment and (2) is causally related thereto. *Brody v. Workmen's Compensation Appeal Board (Pennsylvania Public Utility Commission),* 138 Pa. Cmwlth. 456, 588 A.2d 575 (1991). An injury may be sustained "in the course of employment" under Section 301(c)(1) of the Act in two distinct situations: (1) where the employee is injured on or off the employer's premises, while actually engaged in furtherance of the employer's business or affairs; or (2) where the employee, although not actually engaged in the furtherance of the employer's business

or affairs, (a) is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on, (b) is required by the nature of his employment to be present on the employer's premises, and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon. *Hemmler v. Workmen's Compensation Appeal (Clarks Summit State Hospital),* 131 Pa.Cmwlth. 24, 569 A.2d 395 (1990).

Employer first contends that Claimant's injury did not arise in the course of her employment because she was on her lunch break at the time of the injury and was not actually engaged in the furtherance of Employer's business or affairs.[5]

■ The Act is remedial in nature and intended to benefit workers; therefore, the phrase "actually engaged in the furtherance of the business or affairs of the employer" under Section 301(c)(1) of the Act must be given a liberal construction to effectuate the humanitarian objective of the Act. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe),* 539 Pa. 322, 652 A.2d 797 (1995); *Mann v. City of Philadelphia,* 128 Pa.Cmwlth. 499, 563 A.2d 1284 (1989), *appeal denied,* 525 Pa. 622, 577 A.2d 892 (1990). "To determine whether an employee was acting in the furtherance of the employer's business or affairs, courts consider the nature of the employment and conduct[,] a case specific inquiry." *Was-*

4. The Board also affirmed the WCJ's order directing Employer to pay for medical expenses incurred by Claimant for the treatment received from Dr. Bennett for the first ninety days, rejecting Employer's contention that it was not liable for the payment of those medical expenses due to her failure to visit one of the physicians or other health care providers designated by Employer for the first ninety days, as required by Section 306(f.1)(1)(i) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 531(1)(i). On appeal, Employer does not challenge the WCJ's award of the medical expenses.

5. This Court's scope of review in a workers' compensation case is limited to determining whether the WCJ's necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988). The appellate role in a workers' compensation case is not to reweigh the evidence or review the credibility of the witnesses; rather, the appellate court must simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan),* 531 Pa. 287, 612 A.2d 434 (1992).

*serman v. Fifth & Reed Hospital,* 442 Pa.Super. 563, 660 A.2d 600, 604 (1995). Whether the employee was acting in the course of employment at the time of injury is a question of law to be determined based on the factual findings made by the WCJ. *Peterson v. Workmen's Compensation Appeal Board (PRN Nursing Agency),* 528 Pa. 279, 597 A.2d 1116 (1991).

To support its contention that Claimant's injury did not arise in the course of her employment, Employer relies on the cases holding that the claimant was not entitled to benefits for the injury sustained during the lunch break. *See, e.g., Kmart Corp. v. Workers' Compensation Appeal Board (Fitzsimmons),* 561 Pa. 111, 748 A.2d 660 (2000) (the claimant experienced nightmares after observing the attack of her coworker by the coworkers' estranged husband at the restaurant located on the employer's premises and aiding the injured coworker following the attack, while off-duty during her lunch hour); *Collins v. Workmen's Compensation Appeal Board (American Society for Testing & Materials),* 99 Pa.Cmwlth. 228, 512 A.2d 1349 (1986) (the claimant sustained the injury, when she fell on the sidewalk two blocks from the employer's premises while returning from lunch); *Giebel v. Workmen's Compensation Appeal Board,* 41 Pa. Cmwlth. 333, 399 A.2d 152 (1979) (the claimant sustained the injury when she slipped and fell during the lunch hour at the employer's retail store located within the building in which she worked).

The cases relied on by Employer are factually distinguishable and do not support its position. In those cases, the claimants were injured while off-duty during their lunch hour. In this matter, however, the facts found by the WCJ establish that Claimant was not on lunch break at the time of the injury. The WCJ found that as the unit supervisor supervising up to twenty-seven reservation agents, Claimant was expected to be present and visible in the office throughout her shift to assist the agents, handle any problems which they may encounter, and deal with irate customers. The supervisors did not have set lunch hours due to the nature of the business, and it was up to each supervisor to determine the time and the length of lunch break. Employer's witnesses conceded that the supervisors took lunch break only when it would be operationally acceptable, that there were days when the supervisors had little or no lunch break due to the busy operation of the business, and that even when they ate lunch in the lunchroom, they were often approached by the agents for assistance.

When asked by the WCJ, Michelle Tegge, the unit supervisor, admitted that it was possible for a supervisor to go to the first floor of the building to pick up take-out food, as Claimant did, and still not be in a lunch break status. Tegge testified:

Q. So you wouldn't know, would you, or would you know, if a person left the floor and if they were going downstairs for whatever, the particular facility that had carryouts or food items, you would—that it is possible, or is it possible that person could go pursue those items and not be in the lunch status, but just to be going to pick up some particular items and continue their duties?

A. Could be, yes.

Q. So if your testimony is that you have the right to elect what is your lunch hour, you would have the right, if I understand it, then, to say to yourself, that I am doing these things, but I'm not in the lunch status.

A. You could. I guess you could say that you're not in the lunch status, . . . .

March 24, 1998 Hearing, N.T., p. 42.

On November 27, 1996, just before Thanksgiving Day, Claimant decided to order takeout food and continue to work without taking lunch break and remain available to assist the agents because she was busy during that time of the year before the approaching holidays and had pressing matters on her desk to be taken care of. Claimant was injured on the first

floor of the building while returning to her office after picking up the ordered takeout food. Under these facts, Claimant established that she sustained the injuries during the regular working hour, not during lunch break.

■ Moreover, it is well established that an employee is considered to have sustained an injury while actually engaged in the furtherance of an employers' business interests and affairs, where the injury occurred during inconsequential or innocent departure from work within the regular working hours. *Workmen's Compensation Appeal Board v. Borough of Plum*, 20 Pa.Cmwlth. 35, 340 A.2d 637 (1975). As this Court explained in *Cozza v. Workmen's Compensation Appeal Board*, 34 Pa. Cmwlth. 605, 383 A.2d 1324, 1325 (1978):

'[C]ourse of employment' embraces intervals of leisure within regular hours of the working day and that momentary departures from the work routine do not remove an employee from the course of his employment..... Breaks which allow the employee to administer to his personal comfort better enable him to perform his job and are therefore considered to be in furtherance of the employer's business. (Citation omitted.)

This so-called "personal comfort doctrine" applies not only to a traveling employee but also to a stationary employee, i.e., one who works primarily at the business site such as Claimant, although the doctrine will necessarily be applied more broadly to the traveling employee.

■ The facts in this matter are similar to those in *D'Agata National Inc. v. Workmen's Compensation Appeal Board (D'Agata)*, 84 Pa.Cmwlth. 27, 479 A.2d 98 (1984), which involved the claimant, who was shot while entering a mobile luncheonette located on the employer's property to have a cup of coffee after leaving his office

to meet potential customers. This Court upheld the WCJ's award of benefits, concluding that such minor deviations of the claimant for personal comfort or leisure would not break the chain of conduct in the course of employment, and that the claimant was actually furthering the employer's business or affairs at the time of the injury. As in *D'Agata*, Claimant's momentary, inconsequential and innocent departure from the work area during the regular working hour to pick up the takeout lunch from the restaurant located on the first floor of the building cannot be considered an event breaking the chain of conduct in the course of her employment.

■ Contrary to Employer's assertion, the question of whether Claimant actually provided assistance upon her return to the office after picking up the takeout lunch and following her injury is irrelevant in determining whether Claimant was furthering Employer's business or affairs at the time of the injury. In *Keiter v. Workmen's Compensation Appeal Board (Avondale Borough)*, 654 A.2d 629 (Pa.Cmwlth. 1995), *appeal denied*, 544 Pa. 648, 664 A.2d 976 (1995), the claimant, who was the voluntary fireman and emergency medical technician, was on call during the lunch break to take inebriated individuals home on New Year's Eve. The claimant was injured when he was hit by the truck one and one-half miles from the firehouse during the lunch break. Under these facts, this Court concluded that the claimant was furthering the employer's business and affairs at the time of the injury. As in *Keiter*, Claimant intended to remain on-call to provide assistance to the agents upon her return after picking up the takeout lunch. Under *Keiter*, therefore, Claimant's momentary departure from the work area to get lunch should not bar her entitlement to compensation.[6]

6. Because Claimant sustained the injury while engaging in the furtherance of Employer's business or affairs, she is entitled to benefits, regardless of whether the injury was sustained on or off Employer's premises. Consequently, it is unnecessary to address Employer's contention that the WCJ erred in finding that Claimant sustained the injury on the premises or the common area leased, occupied or controlled by Employer, that Claimant

Accordingly, the order of the Board is affirmed to the extent that it affirmed the WCJ's grant of total disability benefits from December 3, 1996 to February 17, 1997 and partial disability benefits for the period of her return to work on the part-time basis from February 18, 1997 to April 14, 1997.

### III.

Claimant contends that the WCJ erred in suspending her benefits as of April 14, 1997, asserting that the testimony accepted by the WCJ established her ongoing and indefinite disability after she stopped working on the part-time basis due to the pain on April 14, 1997.

Our review of the WCJ's decision reveal numerous inconsistent findings regarding Claimant's disability as of April 14, 1997. The WCJ accepted as credible Claimant's testimony that her condition worsened after she returned to work on February 18, 1997 on the part-time basis, that she stopped working on April 14, 1997 due to the persistent pain. WCJ's Findings of Fact No. 8. The WCJ also accepted Dr. Bennett's opinion that Claimant was fully disabled from April 14, 1997 until May 31, 1997 when she accepted the severance package offered by Employer, and that she was thereafter only capable of working on a very limited basis as the retail clerk at the family-owned store for fifteen to twenty-eight hours a week. *Id.* at No. 18. The WCJ specifically found that on April 14, 1997, "[Claimant's] injuries sustained in this case prevented her from continuing [to work] any further" and that "[f]rom April 15, 1997 through the present, the claimant has not derived any income or other compensation from the business which she and her husband jointly operated since February of 1997." *Id.* at Nos. 27 and 28.

The WCJ also found, however, that Claimant was partially disabled from February 18, 1997 through the present, that her partial disability was continuing up to May 31, 1997 when she accepted the severance package offered by Employer, and that "there was no evidence of continued wage loss due to disability." *Id.* at Nos. 26, 28 and 34. The WCJ further stated that "the amount of partial disability wage loss payments from April 18, 1997 continuing indefinitely ... is $527.09 per week." *Id.* at No. 28.[7] Due to these inconsistent findings made by the WCJ regarding the extent of Claimant's disability after she stopped working on April 14, 1997, we cannot determine the propriety of the suspension of her benefits as of April 14, 1997. Accordingly, this matter must be remanded to the WCJ to reconcile the inconsistencies in his findings.

### IV.

Claimant also challenges the Board's conclusion that her benefits should be suspended as of May 31, 1997, the date of her acceptance of the severance package offered by Employer as part of its reorganization plan. Claimant argues that her benefits may not be suspended based solely on her acceptance of severance benefits and that Employer is only entitled to a credit for the amount of the severance benefits she received toward her workers' compensation benefits to be awarded, pursuant to Section 204(a) of the Act, 77 P.S. § 71(a), which provides in relevant part that "[t]he severance benefits paid by the employer directly liable for the payment of compensation ... shall also be credited against the amount of the award ..., except for benefits payable under section 306(c) [77 P.S. § 513 (specific loss benefits)]."

---

was required to be in that area at the time of the injury, and that her injury was caused by the condition for Employer's premises or the common area.

7. The WCJ found that Claimant was entitled to total disability benefits in the maximum compensation rate of $527.09 for the closed period. Thus, $527.09 cannot be a correct amount of her weekly partial disability benefits.

Under the Act, a claimant is entitled to disability benefits only where the claimant's loss of earning power is caused by his or her disabling work-related injury or disease. *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Petrisek),* 537 Pa. 32, 640 A.2d 1266 (1994). Consequently, when the claimant voluntarily retires or leaves the labor market, his or her disability benefits must be suspended. *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson),* 543 Pa. 74, 669 A.2d 911 (1995); *Smith v. Workers' Compensation Appeal Board (Dunhill Temporary Systems),* 725 A.2d 1285 (Pa.Cmwlth.1999). In order to continue to receive disability benefits following retirement or separation from employment, therefore, the claimant must establish that he or she is seeking employment or that he or she was forced into a compulsory retirement or separation from employment due to the work-related injury. *Henderson; City of Philadelphia v. Workmen's Compensation Appeal Board (Defruscio),* 695 A.2d 910 (Pa. Cmwlth.1997).

In this matter, the WCJ found that Claimant chose to accept the severance package offered by Employer and that she thereafter worked as the retail clerk at the family-owned business for up to twenty hours a week. The WCJ, however, failed to make any specific findings as to whether Claimant removed herself from the work force by accepting the severance package or was forced to accept the severance package due to the work injury. Hence, the Board erred in concluding, without necessary findings of the WCJ, that Claimant's benefits should be suspended as of May 31, 1997.

Moreover, profits generated from operating a family-owned business may not be accepted as a measure of the claimant's earning power in determining whether the employer is entitled to modification or suspension of the claimant's benefits, unless the profits are almost entirely the result of personal management and endeavor of the claimant. *Joy Technologies, Inc. v. Workmen's Compensation Appeal Board (Heeter),* 155 Pa.Cmwlth. 9, 624 A.2d 710 (1993); *Fruehauf Corp. v. Workmen's Compensation Appeal Board (Michaels),* 126 Pa. Cmwlth. 298, 559 A.2d 609 (1989); *Clingan v. Fairchance Lumber Co.,* 166 Pa.Super. 331, 71 A.2d 839 (1950).[8]

In this matter, the WCJ accepted as credible the testimony presented by Claimant that she only waited on customers at the family-owned store for up to twenty hours a week and that her husband performed all the tasks necessary to operate the business. The WCJ also found that the family-owned business did not generate any profit and that Claimant and did not receive any wages from the business. Therefore, Claimant's benefits cannot be suspended or modified based on her work at the family-owned store following her separation from employment with Employer.

Hence, the order of the Board is vacated to the extent that it affirmed the WCJ's suspension of Claimant's benefits, as modified. This matter is remanded to the WCJ to make further findings, based on the record, as to the extent of Claimant's disability after April 14, 1997 and whether she voluntarily removed herself from the labor market by accepting the severance package offered by Employer on May 31, 1997 or was forced into accepting the severance package due to the work injury, and to determine, based those findings, if

---

**8.** In *Rossi v. Workmen's Compensation Appeal Board (City of Hazleton),* 164 Pa.Cmwlth. 233, 642 A.2d 1153 (1994), *appeal denied,* 539 Pa. 660, 651 A.2d 545 (1994), this Court held that under certain circumstances, the claimant's earnings from the family-owned business may properly be imputed based on the evidence of the prevailing wages presented by the employer to determine whether the claimant's benefits may be modified or suspended. In this matter, no evidence of prevailing wages for a retail clerk in the area was presented at the hearings.

and when her benefits should be suspended.

### ORDER

AND NOW, this 15th day of November, 2000, the order of the Workers' Compensation Appeal Board (Board) in the above-captioned matter is affirmed to the extent that it affirmed the decision of the workers' compensation judge (WCJ) to grant Glenda Dixon (Claimant) total disability benefits from December 3, 1996 to February 17, 1997 and partial disability benefits from February 18, 1997 to April 14, 1997. The order of the Board is vacated to the extent that it affirmed the WCJ's suspension of Claimant's benefits as modified. This matter is remanded to the WCJ to make further findings, based on the record, as to the extent of Claimant's disability after April 14, 1997 and whether she voluntarily removed herself from the labor market by accepting the severance package offered by Employer on May 31, 1997 or was forced into accepting the severance package due to the work injury, and to determine, based on those findings, if and when her benefits should be suspended.

Jurisdiction relinquished.

McGINLEY, Judge, dissenting.

I respectfully dissent to the majority's conclusion that Claimant was furthering Employer's business when she slipped on a wet floor outside a restaurant after she picked up her lunch. Although Claimant was returning to her office, she was clearly on a lunch break when she fell. I do not believe an employee collecting a take-out lunch is an act that furthers the employer's business. The fact that the restaurant was located in the same building as Claimant's place of employment is inconsequential. She was no more in furtherance of Employer's business than if she slipped outside a restaurant located a substantial distance away. I do not believe the prox-imity of the restaurant to the office is material and that it is error to consider it so.

Additionally, I do not believe this situation comes under the "personal comfort doctrine." Under the decision reached by the majority, the situations under which an employee may receive benefits under the Act would greatly expand.[1]

---

1. Because I would deny Claimant's claim petition, I would necessarily not have to address the issues of Claimant's cross-appeal.