**SUMMIT TRAILER SALES,**
**Petitioner,**

v.

**WORKERS' COMPENSATION**
**APPEAL BOARD (WEIKEL),**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 25, 2002.
Decided March 27, 2002.

Karrie S. Millett, Reading, for petitioner.

Lester Krasno, Pottsville, for respondent.

Before SMITH–RIBNER, J., SIMPSON, J., and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Summit Trailer Sales, Inc. (Employer) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the decision of a workers' compensation judge (WCJ) denying its petition to modify or suspend compensation benefits, pursuant to the provisions of the Pennsylvania Workers' Compensation Act (Act).[1] We affirm.

On December 4, 1997, Claimant sustained an injury in the nature of a low back strain/sprain while in the course and scope of his employment as a laborer for Employer. Pursuant to a notice of compensation payable dated January 12, 1998, Claimant received compensation benefits at a rate of $300.00 per week based on an average weekly wage of $450.00.

On January 22, 1998, Claimant filed a claim petition in which he alleged that he suffered a low back injury on December 4, 1997 while lifting tires into a chassis. Employer filed an answer to the petition denying all of the material allegations raised therein.

Pursuant to a notice of compensation payable dated June 9, 1998, Claimant's compensation benefits based on the low back strain/sprain injury were reduced to a rate of $271.00 per week based on an average weekly wage of $375.60. On August 31, 1998, Employer filed a petition to modify/suspend/review compensation benefits[2] in which it sought to set aside the notice of compensation payable, and alleged that Claimant did not suffer a compensable injury while in the course and scope of his employment. Employer also sought, in the alternative, "[a] modification or suspension of benefits based upon the claimant's medical clearance to return to work and available for work within his restrictions[3], entitling the employer to a

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1—1041.1; 2501—2626.

2. Section 413 of the Act provides, in pertinent part, that "[a WCJ] designated by the department may, at any time, modify, .... suspend, or terminate a notice of compensation payable .... or an award of the department or its [WCJ], upon petition filed by either party with the department, upon proof that the disability of an injury employe has increased, decreased, recurred, or has temporarily or finally ceased...." 77 P.S. § 772.

3. Section 306(b)(2) and (3) of the Act provides, in pertinent part:

   (2) **"Earning power"** shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth.... If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by an expert approved by the department and selected by the insurer.

   (3) If the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer must provide prompt written notice, on a form prescribed by the department, to the claimant, which states all of the following:
   (i) The nature of the employe's physical condition or change of condition.
   (ii) That the employe has an obligation to look for available employment.
   (iii) That proof of available employment opportunities may jeopardize the employe's right to receipt of ongoing benefits.
   (iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions. 77 P.S. § 512(2), (3).

modification and/or suspension of benefits."[4] Claimant filed an answer to the petition denying all of the material allegations raised therein.

Hearings on the petitions ensued before the WCJ. Claimant testified at the hearings. Employer presented the deposition testimony of: Steven J. Triantafyllou, M.D., a physician board certified in orthopedic surgery; James T. Parks, a certified rehabilitation counselor[5]; Wayne Lechleitner, a foreman for Employer; Mary Heacock, the secretary of the Westwood Bowling Lanes Leagues; William I. Neitz, Jr., the manager of the Westwood Bowling Lanes; Daniel Fitzgerald, a welder for Employer; Melvin Swab, a private investigator; Jeffrey M. Boughner, a private investigator; James Arrasmith, a private investigator; Martin Sterner, a police officer for the St. Clair Police Department; and John Weikel, Claimant's uncle.

On October 5, 1999, the WCJ issued a decision and order disposing of the petitions in which she made the following relevant findings of fact:

> 6. Claimant testified that he continues to have pain in his low back. He testified that he would not be able to perform his pre-injury job because of the constant bending and heavy lifting. Claimant testified that he helped his uncle at a hot dog stand outside of his uncle's restaurant for approximately two (2) hours a day for two (2) weeks in the summer of 1998. He testified that he

was not paid, and has never been paid for anything he did for his uncle. He testified that his uncle permitted his family to live in an apartment he owned rent free. Claimant testified that he has looked for work. He testified that he has applied for positions and sent resumes, but he has not been hired.

> \* \* \*

> 9. Claimant testified that he understood that the doctors have released him to return to light-duty work. He testified that he then applied to OVR. Claimant testified that he was admitted into the OVR program in December of 1998, and entered school .... to take courses in computer science....

> 10. Claimant testified that he met with the Vocational Counselor, James Parks, on two (2) occasions, and signed the employment verification documents.

> \* \* \*

> 19. [Mr. Parks] performed a vocational assessment of Claimant on July 23, 1998, and did a labor market survey, resulting in the location of ten (10) jobs in Claimant's geographical area that he could perform.

> 20. The [WCJ] finds Mr. Parks' opinions, that the ten (10) jobs are vocationally suitable for Claimant, to be credible. Those opinions were unrefuted, and were corroborated by the transferable skills analysis that Mr. Parks performed. The [WCJ] notes that Mr.

---

4. Employer now asserts that it "[f]iled a Suspension/Modification Petition alleging that claimant had returned to work at an undetermined 'earning power' and that work was available within claimant's restrictions as of December 5, 1997." Brief of Petitioner at 4.

5. An expert utilized under the provisions of Section 306(b)(2) of the Act must be one approved by the Department of Labor and Industry through the Bureau of Workers' Compensation; a WCJ lacks the independent authority to approve an expert vocational

counselor as provided in Section 306(b)(2). *Walker v. Workers' Compensation Appeal Board (Temple University Hospital)*, 792 A.2d 628 (Pa.Cmwlth.2002); *Caso v. Workers' Compensation Appeal Board (School District of Philadelphia)*, 790 A.2d 1078 (Pa.Cmwlth. 2002). Thus, a claimant cannot be compelled to interview with a vocational expert, pursuant to the provisions of Section 314(a) of the Act, unless that expert has been "approved by the department" as provided in Section 306(b)(2) of the Act. *Walker; Caso.*

Parks did testify that it was appropriate for Claimant to go through retraining through OVR.

* * *

22. In Dr. Triantafyllou's opinion, Claimant suffered a work injury on December 4, 1997, based upon Claimant's history provided, in the nature of low back pain, lumbar sprain, lumbar disc disease, and damage to the discs at L3–L4 and L4–5, including an annular tear at L4–5. In his opinion, Claimant can do light to medium work on a full-time basis and could perform all of the jobs in the labor market survey, the activities shown in the surveillance tapes and Claimant's OVR retraining are consistent with his restrictions, and Claimant cannot perform his pre-injury job.

* * *

33. Mr. Boughner testified that the videotape accurately depicts the activities he saw Claimant performing on the days that he performed surveillance of Claimant. The videotape shows Claimant standing at a makeshift grill outside the Stone Manor Inn, selling hot dogs and other food, collecting money, and making change. He testified that he observed Claimant perform that activity for about two (2) to four (4) hours....

* * *

37. Officer Sterner testified that he saw the grill operating in front of the Stone Manor Inn for several weeks. He testified that he saw Claimant serving people at the grill. He testified that he could not say that Claimant was there more than two (2) weeks or for more than a couple of hours a day. He testified that Claimant did very little bending, no twisting, and climbed only two (2) steps that he observed.

* * *

39. [Claimant's uncle, John Weikel,] testified that he opened the grill in front of his restaurant toward the end of June, 1998, as a way of promoting business. He testified that it was only open for two and a half (2½) weeks, when he got hurt and closed everything down. He testified that Claimant, Claimant's father, and a friend helped him run the stand, but no one was paid for their efforts. He testified that he provides free rent to Claimant's father, and had to Claimant as well when Claimant lived there.

40. The [WCJ] finds that the [Employer] offered no evidence that Claimant was provided with the Notice of Ability to Return to Work, as required by Section 306(b)(3) of the Act, as amended.

41. The [WCJ] finds that Claimant suffered a work injury on December 4, 1997, in the nature of low back pain, lumbar sprain, lumbar disc disease at L3–4 and L4–5, and an annular tear at L4–5, that Claimant cannot perform his pre-injury job, and that Claimant has not fully recovered from his work injury.

WCJ Decision at 5–6, 7, and 9–10.

Based on the foregoing, the WCJ made the following relevant conclusions of law:

2. On the Claim Petition, Claimant bears the burden of proving that he suffered a work-related injury that resulted in disability. Herein, the [WCJ] concludes that Claimant has carried his burden of proof.

3. On the Petition to Modify, Suspend, or Review Compensation Benefits, the [Employer] bears the burden of proving that there is actual and available employment for Claimant within his restrictions or that the Notice of Compensation Payable should be set aside for material mistake, respectively. Herein, the [WCJ] concludes that the [Employer] has not carried its burden of proof.

* * *

6. The [WCJ] concludes that the Modification/Suspension Petition should be denied and dismissed as the [Employer] failed to comply with the terms of the Act, specifically Section 306(b)(3) which requires that the carrier provide a claimant with a Notice of Ability to Return to Work before referring jobs, especially through a labor market survey. The [WCJ] concludes that the Notice of Ability to Return to Work is a threshold requirement, and the [Employer] may not attempt to modify or suspend Claimant's benefits through a labor market survey until the Notice of Ability to Return to Work has been sent to Claimant. That was not done in this case. *Id.* at 10–11.

As a result, the WCJ issued an order which, *inter alia:* (1) granted Claimant's claim petition; (2) directed that Claimant receive compensation benefits in the amount of $271.00 per week from December 4, 1997 onward; and (3) denied and dismissed Employer's Petition to Modify, Suspend or Review Compensation Benefits. *Id.* at 11–12.

On October 26, 1999, Employer filed an appeal of the WCJ's decision with the Board. On July 27, 2001, the Board issued an Opinion and Order affirming the WCJ's decision. Employer then filed the instant petition for review.[6]

In this appeal, Employer claims that the Board erred in affirming the WCJ's decision denying its petition to suspend or modify Claimant's compensation benefits. In particular, Employer asserts: (1) it was entitled to a modification or suspension of Claimant's compensation benefits based upon the imputed earnings Claimant would have received based upon the work he performed for his uncle at the Stone Manor Inn; and (2) it is not required to prepare and provide a Notice of Ability to Return to Work under Section 306(b)(3) of the Act prior to a suspension or modification of Claimant's compensation benefits.

Employer first claims that it "[e]stablished through substantial, competent evidence that claimant engaged in food sales work from June, 1998 through July, 1998 and this constitutes sufficient evidence of earning capacity to entitle the employer to a modification of compensation benefits." Brief of Petitioner at 16. We do not agree.

■ It is true that compensation benefits may be modified or suspended, based upon an imputed earning capacity, where a claimant has returned to substantial gainful employment. *See, e.g., Capuano v. Workers' Compensation Appeal Board (Boeing Helicopter Company)*, 724 A.2d 407 (Pa.Cmwlth.1999); *Rossi v. Workmen's Compensation Appeal Board (City of Hazleton)*, 164 Pa.Cmwlth.233, 642 A.2d 1153 (1994), *petition for allowance of appeal denied*, 539 Pa. 660, 651 A.2d 545 (1994). However, it has long been recognized that profits derived from a family-owned business may not be accepted as a measure of a claimant's earning power in determining whether an employer is entitled to a modification or suspension of the claimant's benefits, unless the profits are almost entirely the result of personal management and endeavor of the claimant.

---

**6.** In workers' compensation cases, this Court's scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, appeal board procedure was violated, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal* *Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Mrs. Smith's Frozen Foods v. Workmen's Compensation Appeal Board (Clouser)*, 114 Pa. Cmwlth. 382, 539 A.2d 11 (1988).

*See, e.g., U.S. Airways v. Workers' Compensation Appeal Board (Dixon)*, 764 A.2d 635 (Pa.Cmwlth.2000), *petition for allowance of appeal denied*, 567 Pa. 753, 788 A.2d 382 (2001); *Joy Technologies v. Workmen's Compensation Appeal Board (Heeter)*, 155 Pa.Cmwlth.9, 624 A.2d 710 (1993); *Town & Country Fine Furniture v. Workmen's Compensation Appeal Board (Charles K. Jerrechian & Sons)*, 128 Pa.Cmwlth.106, 562 A.2d 1002 (1989); *Fruehauf Corp. v. Workmen's Compensation Appeal Board (Michaels)*, 126 Pa. Cmwlth.298, 559 A.2d 609 (1989); *Connolly v. Campbell*, 8 Pa.Cmwlth. 99, 301 A.2d 109 (1973); *Stever v. Rea & Derick*, 206 Pa.Super. 158, 212 A.2d 90 (1965); *Clingan v. Fairchance Lumber Co.*, 166 Pa.Super. 331, 71 A.2d 839 (1950).

■ In the instant case, the testimony found credible by the WCJ establishes that Claimant operated a grill at his uncle's restaurant for 2 to 4 hours per day for a 2–½ week period, and that Claimant received no payment for his efforts. *See* WCJ Decision at 9. There is absolutely no evidence of record to establish that Claimant had any interest in the business, or earned any profit or remuneration of any kind for the services he performed for his uncle.[7] In short, the limited service that Claimant performed for his uncle does not provide a basis for modifying or suspending Claimant's disability benefits. *See U.S. Airways*, 764 A.2d at 644 ("[I]n this matter, the WCJ accepted as credible the testimony presented by Claimant that she only waited on customers at the family-owned store for up to twenty hours a week and that her husband performed all the tasks necessary to operate the business. The WCJ also found that the family-owned business did not generate any profit and that Claimant did not receive any wages from the business. Therefore, Claimant's benefits cannot be suspended or modified based on her work at the family-owned store following her separation from employment with Employer."); *Fruehauf Corp.*, 559 A.2d at 610 ("[H]ere, the employer presented only the testimony of the claimant that he assisted his sons and wife in running the family farm. Such testimony falls far short proving that the profits were 'almost entirely the direct result' of the claimant's personal management and endeavor."); *Stever*, 212 A.2d at 94 ("[T]here is ample evidence to show that the profits from the operation of the poultry farm were due to the joint efforts of the family and largely under the supervision and management of the wife, and not the result of claimant's management and endeavor.").[8]

---

7. Employer asserts that Claimant received an in-kind payment for his services by living rent-free on his uncle's property. *See* Brief of Petition at 19. However, the WCJ found as fact that Claimant's uncle provides free rent to his brother, Claimant's father, and that he had provided it to Claimant as well *while Claimant lived there*. *See* WCJ Decision at 9. The testimony in this case supports this finding of fact, and demonstrates that Claimant was not living at the Stone Manor Inn when he performed these services for his uncle. *See* N.T. 3/24/99 at 13; N.T. 4/22/99 at 21. In fact, Claimant had only lived at his uncle's property for a period of two months, at the time his work-related injury occurred. *See Id.* Thus, contrary to Employer's assertion, Claimant did not receive any in-kind payment for the services he provided for his uncle during this brief period of time.

8. Even if it were assumed that the earning capacity could be imputed to Claimant for the services he provided to his uncle for this limited period of time, this would only entitle Employer to a suspension or modification for the 2–½ week period that Claimant performed these services. *See, e.g., Pennsylvania Liquor Control Board v. Workers' Compensation Appeal Board (Lardin)*, 707 A.2d 621 (Pa. Cmwlth.1998) (Where a claimant accepts a temporary or seasonal position with another employer, his benefits are not suspended indefinitely, but only to the extent of the terms of the temporary position.).

Finally, Employer claims that the Board erred in affirming the WCJ's decision denying its petition to suspend or modify Claimant's compensation benefits because it is not required to prepare and provide a Notice of Ability to Return to Work under Section 306(b)(3) of the Act prior to a suspension or modification of these benefits. Again, we do not agree.

As this Court has recently stated:

[T]he Court notes that the question of whether there was sufficient evidence that [the claimant] could perform the offered job goes directly to the question of whether the WCJ and the Board erred in suspending benefits. [The claimant] stresses that under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Constr. Co.)*, 516 Pa. 240, 252, 532 A.2d 374, 380 (1987), an employer seeking to modify a claimant's benefits must produce evidence of a referral to an open job "which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc." . . . .

Employer responds that *Kachinski* principles do not apply to Act 57 cases. . . . In particular, the amendments provided for the first time a definition of "earning power", which is used to calculate the compensation for partial disability, as being determined by work that the employee is capable of performing, which shall be based upon expert opinion evidence that includes job listings from various sources but does not require a referral to a then-open job as was the case under *Kachinski* . . . .

The Court notes, however, that as a matter of law the purported job offer in this case satisfied neither the standards developed under *Kachinski* nor the requirements of the Act 57 amendments. In *Kachinski* it was held that an employer need not specify every aspect of every proposed job, but it did have to provide medical clearance describing the claimant's capabilities, vocational evidence classifying the level of exertion and a basic description of the job in question. The Court deems the *Kachinski* standards to apply to job offers that are required to be made by an employer under the new provisions of Section 306(b)(2). [The claimant] is correct that the record is devoid of evidence that the job offered was sedentary. . . .

As for the procedure under the Act 57 amendments, the Court notes that those amendments also added Section 306(b)(3), 77 P.S. § 512(3). That provision requires the insurer, if it receives medical evidence that a claimant is able to return to work in any capacity, to provide prompt written notice to the claimant on a prescribed form, stating: (1) the nature of the employee's physical condition or change of condition; (2) that the employee has an obligation to look for available employment; (3) that proof of available employment opportunities may jeopardize the employee's right to receipt of ongoing benefits; and (4) that the employee has the right to consult with an attorney in order to challenge the insurer's contentions. There is no evidence of compliance with the provisions of Section 306(b)(3). Further, no expert vocational testimony was presented to establish earning power otherwise. Section 306(b)(2). Therefore, employer has not satisfied its burden. Accordingly, the Board's order is reversed insofar as it affirmed the suspension of benefits in regard to the low back injury. . . .

*Hoover v. Workers' Compensation Appeal Board (Harris Masonry, Inc.)*, 783 A.2d 886, 889–890 (2001).

Thus, contrary to Employer's assertion, compliance with the provisions of Section 306(b)(3) is a threshold burden

which must be met in order to obtain a modification or suspension of Claimant's benefits. *Id.* Indeed, Section 306(b)(3) of the Act provides, in pertinent part, that "[i]f the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer *must provide prompt written notice, on a form prescribed by the department, to the claimant,* which states all of the following...." 77 P.S. § 512(3) (emphasis added). In this case, the WCJ found as fact that Employer offered no evidence that it furnished Claimant with the required written notice. *See* WCJ Decision at 9. This finding supports the WCJ's determination that Employer did not meet its burden of proof with respect to its petition to modify or suspend Claimant's disability benefits. *Hoover.* As a result, the Board did not err in affirming the WCJ's decision, and Employer's claim to the contrary is meritless.[9]

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this *27th* day of *March,* 2002, the order of the Workers' Compensation Appeal Board, dated July 27, 2001 at No. A99–3301, is affirmed.

---

9. Although not dispositive to the instant appeal, it is worth noting that there is no indication in the record of this case that the expert opinion testimony offered by Employer was presented by "[a]n expert approved by the department", as required under Section 306(b)(2) of the Act. In light of the recent opinions of this Court in *Walker* and *Caso,* it would appear that an employer is required to establish such approval, as a foundation for the competency of the expert testimony, in meeting its burden under Section 306(b)(2).