The TOWN & COUNTRY MAN-
AGEMENT CORPORA-
TION, Appellant,

v.

ZONING HEARING BOARD OF the BOROUGH OF EMMAUS and East Penn School District and the Borough of Emmaus.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 12, 1996.

Decided Feb. 14, 1996.

Emil W. Kantra, II, for Appellant.

John W. Ashley, for Appellee, Borough of Emmaus.

Ronald E. Corkery, for Appellee, Zoning Hearing Board of the Borough of Emmaus.

Marc S. Fisher, for Appellee, East Penn School District.

Before PELLEGRINI and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The Town & Country Management Corporation (Town & Country) appeals from the order of the Court of Common Pleas of Lehigh County that affirmed the grant of a "special exception" by the Zoning Hearing Board of the Borough of Emmaus (ZHB) to the East Penn School District (School District). We affirm.

The School District applied for a special exception to utilize property located across the street from Emmaus High School as a parking lot (subject property).[1] The subject property is located at the southwest corner of North Street and Macungie Avenue in the R–M zoning district (medium density-

---

1. Town & Country sold the 3.93 acre lot to the School District in 1986.

residential district). The School District proposed to create 318 spaces for parking vehicles on the subject property, primarily devoted to student and faculty use. Emmaus High School is located immediately across the street and to the north of the lot.[2] As part of an overall building program, the former parking lot, adjacent to the school, will be used for athletic fields, enabling students access to the playing fields without having to cross North Street.

Following a August 24, 1993 hearing on the School District's request, the ZHB unanimously granted the special exception, subject to the following conditions: 1) that the appropriate entrance and exit signs be posted and maintained by the School District; 2) that a traffic control light/signal, as approved by the appropriate municipal/state agencies, be installed on North Street; 3) that lighting on the parking lot be in accordance with borough ordinances, on a timer, and only during the school hours and/or school events; and 4) that a fence, at least five feet in height, be installed along the side of the parking lot facing Crest Way. Town & Country appealed and the trial court ordered a remand for findings which, *inter alia*, addressed Town & Country's traffic concerns.

At the remand, the School District presented the testimony of one witness, Barry Brobst, an architect. Town & Country also appeared and offered the testimony of John Naun, an engineer, and other documentary evidence. Mr. Brobst opined that the parking lot would not cause additional traffic because the proposed parking lot, by itself, did not increase the number of cars but simply would relocate them from the parking lot across the street to the new lot. Mr. Naun's testimony focused on what he perceived to be increased traffic in the morning traveling west on North Street and making a left hand turn into the proposed parking lot. He believed that this would create a backup along North Street because the high majority of travel to the parking lot would be coming from Emmaus.

■ After reviewing this additional evidence, the ZHB, once again, unanimously granted approval to the School District, subject to the same four conditions set forth in the earlier decision, and with the additional proviso that a fence be installed along the entire length of the Ridge Street side of the parking lot. The trial court affirmed and Town & Country now appeals to this Court.[3]

In the trial court's initial opinion, remanding to the ZHB to make specific findings regarding the criteria found in Section 105(B) of the Emmaus Zoning Ordinance, which includes traffic concerns, the trial judge held that a parking lot use of the type proposed by the School District is not otherwise permitted by right, condition or by special exception within the borough.

Thus, we must consider whether the School District met its burden under the ordinance for such use. Section 105(B) of the ordinance provides, in pertinent part:

105.B. *Uses Not Specifically Regulated.* If a use clearly is not permitted by right, by condition or by special exception by this Ordinance within *any* Zoning District in the Borough, the use is prohibited in the Borough except the applicant may apply to the Zoning Hearing Board. After a review by the Planning Commission, the Zoning Hearing Board may permit such use if the applicant proves all of the following to the satisfaction of the Zoning Hearing Board:

(1) that the use would clearly be less offensive in impacts and nuisances than uses permitted in that district;

(2) that use would be compatible with permitted uses in that district;

(3) that the proposed use would be compatible with the purposes of the district;

2. A residential neighborhood is located to the south and east of the subject property and Town & Country's apartment complex, built subsequent to the erection of the high school, is located to the west of the lot.

3. Because the trial court received no additional evidence our scope of review is to determine whether the ZHB abused its discretion, committed an error of law or made findings of fact which were not supported by substantial evidence. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

(4) that the use can meet the general criteria listed in Section 118.C.4, and

(5) that the use is not 'specifically prohibited' in the district.

Section 105.B incorporates the criteria set forth in Section 118.C.4. of the Zoning Ordinance, which provides as follows:

118.C.4. Complies with all of the following standards:

(a) Other Laws—Will not clearly be in conflict with other Borough Ordinances or State or Federal laws or regulations known to the Borough. The Borough may require an applicant to prove compliance, or to prove that appropriate applications have been submitted to obtain such compliance;

(b) Traffic—Will not result in or significantly add to a significant traffic hazard or significant net increase in traffic congestion, after taking into any improvements proposed to be funded or completed by the applicant;

(c) Safety—Will not create a significant public safety hazard, including fire, toxic or explosive hazards;

(d) Storm Water Management—Will follow adequate, professional accepted engineering methods to manage storm water. Storm water shall not be one of the criteria in making a decision under this Ordinance if the application clearly would be subject to a separate engineering review and an approval of storm water management by the Planning Commission under the Subdivision and Land Development Ordinance;

(e) Neighborhood—Will not negatively affect the desirable character of an existing residential neighborhood in a significant way;

(f) Site Planning—Will involve adequate site design methods, including plant screening and setbacks as needed to avoid significant negative impacts on adjacent uses, and

(g) Performance Standards—Will not have a serious threat of inability to comply with the performance standards of this Ordinance, as stated in Article V.

 The ZHB heard extensive testimony on each of these issues, not only at the remand hearing, but also the original August 24, 1993 hearing. The ZHB made specific findings on each issue. However, Town & Country argued on appeal to the trial court that the testimony to support the findings was improperly received because it was hearsay. The trial judge did not agree, holding that there was no improper testimony concerning the traffic study because although Mr. Brobst generally referred to items contained in the traffic study, at no time did Mr. Brobst quote from the traffic study or was the traffic study offered into evidence. While Town & Country asserts that it did not have an opportunity to cross-examine the preparer of the traffic study, this argument is without merit because the traffic study itself was not introduced into evidence. The fact that the School District's expert witness based his opinion on certain facts that may have been set forth in the traffic study is not improper because an expert may base his opinion on facts or data not actually in the record if the facts or data were reasonably relied upon by people in that field. *See Steinhauer v. Wilson,* 336 Pa.Superior Ct. 155, 485 A.2d 477 (1984). Further, Section 908(6) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10908(6), states that "formal rules of evidence shall not apply, but irrelevant, immaterial or unduly repetitious evidence may be excluded." Hearsay evidence is not mentioned in the statute and thus, the ZHB would not even have been bound by the rules of evidence even if the traffic study had been introduced.[4]

Because the traffic study itself was not admitted into evidence, we hold that the trial court did not err in affirming the ZHB's reliance on Mr. Brobst's testimony to support the findings that the School District met its burden of showing that the proposed parking lot was an acceptable use in Em-

---

**4.** Town & Country cites *Pennsylvania Zoning Law and Practice,* Robert S. Ryan, § 9.4.14, to support its argument that it should have the opportunity to cross-examine the preparer of the "report." Again, because no report was introduced, this reasoning is inapplicable.

maus Township as set forth in the relevant provisions of the zoning ordinance.

Accordingly we affirm.

## ORDER

AND NOW, this 14th day of February, 1996, the order of the Court of Common Pleas of Lehigh County in the above-captioned matter is hereby affirmed.