**Thomas CAPUANO, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BOEING HELICOPTER COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 23, 1998.

Decided Feb. 5, 1999.

Anthony R. Giannone, Philadelphia, for petitioner.

Patrick R. Vitullo, Philadelphia, for respondent.

Before FLAHERTY, J., LEADBETTER, J., and NARICK, Senior Judge.

FLAHERTY, Judge.

Thomas Capuano (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed the order of the Workers' Compensation Judge (WCJ) that granted Boeing Helicopter Corporation's (Employer) modification petition. We affirm.

On July 20, 1992, Claimant worked for Employer as a tool and pattern maker. On that date, Claimant sustained a work-related injury. The Employer issued a notice of compensation payable describing the injury as "strain neck, right chest wall and right hip." On July 12, 1995, Employer filed Petitions for Modification and Suspension, which alleged that in October 1992, Claimant returned to work at an undetermined earning power. Claimant filed an answer denying the allegation. After conducting hearings, the WCJ issued his decision granting Employer a modification of benefits. The WCJ made the following relevant findings of fact (F.F.):

4. In support of its petitions Defendant presented the testimony of Rita Muskoff [sic] a vocational case manager. Rita Moskoff interviewed the Claimant in January, 1995. Based upon Claimant's history, deposition testimony and educational and vocational background, medical records, Rita Moskoff opined that Claimant was capable of working as a self-employed roofing contractor at the minimum annual salary of $28,000.00. Rita Moskoff based this opinion on U.S. Department of Labor research. Based upon Pennsylvania Department of Labor and Industry statistics, Rita Moskoff opined that Claimant was capable of earning $29,145.00 per year. In Rita Moskoff's opinion the roofing contractor position is a sedentary position which would require Claimant to work from an office subcontracting out work, estimating costs of materials, and processing paper work. Rita Moskoff's testimony that Claimant was capable of earning $28,000 per year is credible and persuasive.

5. Defendant also presented the testimony of John D'Orazio an investigator. On April 20, 1994 John D'Orazio observed the Claimant get into a pick-up truck with roofing emblems and travel to a job site. John D'Orazio observed two trucks with a Capuano Roofing sign on it. A supply storage area was observed near Claimant's home where individuals were seen retrieving roofing materials, tile, and big bundles of tar paper.

6. On October 7, 1994, John D'Orazio observed that the pickup truck with new stickers stating, "No job is too tough if you know your stuff." The phone number listed was Claimant's residential phone number, with writings indicating free estimates, porch and shed roofs, slate work, singles, skylights, gutters, spouting, and hot and silver coatings. Claimant was observed working staining a BI-fold door, retrieving the door[,] lifting it up, and carrying it up the steps. The testimony of John D'Orazio is credible and persuasive. The surveillance tape taken by John D'Orazio corroborates his testimony.

7. Defendant also presented the testimony of Shawn King, an investigator. On November 7, 1992 Claimant advised Shawn King that he did roofing work during a telephone call. On November 6, 1992 Shawn called Claimant's residence and was informed that Claimant was out working on roofing jobs. The testimony of Shawn King is credible and persuasive.

8. Defendant presented the testimony of Frank Higgins, an investigator. On July 3, 1996 Frank Higgins left a message on Claimant's answering machine. Thomas Capuano returned the phone call and indicated that he would be willing to come out and give an estimate. The testimony of Frank Higgins is credible and persuasive. The surveillance tapes taken by Frank Higgins corroborates [sic] his testimony

. . . .

12. The surveillance evidence and testimony of John D'Orazio, Shawn King, and Frank Higgins establishes that Claimant has been self employed as a roofing contractor and has been operating his own roofing contractor business as of October, 1992. Claimant has been engaged in soliciting and operating a roofing contractor business.

■ Appellate review over an order of the Board is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact by the WCJ were supported by substantial evidence. *Roadway Express, Inc. v. Workers' Compensation Appeal Board (Siekierka)*, 708 A.2d 132 (Pa. Cmwlth.1998).

■ The first issue which Claimant raises is whether the Board erred in determining that substantial competent evidence supported the WCJ's determination that Claimant was engaged in a roofing business. Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152 (Pa. Cmwlth.1998). Additionally, in performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed before the factfinder. *Id.* Moreover, we are to draw all reasonable inferences which are deducible from the evi-

dence in support of the factfinder's decision in favor of that prevailing party. *Id.* Furthermore, in a substantial evidence analysis where both parties present evidence, it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ, rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding. *Id.* It is solely for the WCJ, as the factfinder, to assess credibility and to resolve conflicts in the evidence. *Id.* In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. *Id.* As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted. *Id.* It is with these principles in mind that we consider this challenge.

Mr. D'Orazio testified that on April 20, 1994 he observed claimant at a job site directing individuals to do work. Employer's attorney asked on re-direct examination: "[a]t that time [April 20, 1994] did it appear that he [Claimant] was directing the individuals working at the site?" Mr. D'Orazio responded: "[y]es by pointing. He was pointing to the materials and then he talked to them and they would go perform what appeared to be the roofing business work that needed to be done for that house." R.R. at 202a–203a. Viewed in a light most favorable to the Employer as the party which prevailed before the factfinder, *Birmingham Fire Insurance*, and drawing all reasonable inferences deducible from this testimony in support of the WCJ's decision, *Lehigh County Vo–Tech*, we find Mr. D'Orazio's testimony to constitute such relevant evidence as a reasonable mind might accept as adequate to support the determination that Claimant worked as a supervisor on roofing jobs. Claimant contends that this testimony cannot constitute substantial evidence to support a finding that Claimant was engaged in conducting his own roofing subcontracting business. Claimant asserts that this testimony cannot constitute substantial evidence because

at no time did he [Mr. D'Orazio] ask the alleged workers if they were employees of claimant (R. 195a). At no time did he ask Mr. Capuano if he was their employer (R. 195a). At no time did anyone inform Mr. D'Orazio that they were employees of claimant (R. 195a). At no time did he ever see the claimant perform any physical work at the alleged job site (R. 195a, 199a). Mr. D'Orazio admits that any observation of Mr. Capuano at this alleged job site was for a short period of time, a total of two (2) minutes.

Claimant's brief at p. 14. However, all of these factors merely go to the weight and credibility of Mr. D'Orazio's testimony, they do not cause his testimony to fail to constitute substantial evidence. Such questions as to the credibility of witnesses and the weight to give to any evidence are solely for the WCJ and cannot be disturbed by this Court. *Bethernergy Mines; Dana.*

Mr. King another investigator, testified as follows:

[On] November 6, 1992, I placed another pretext call to the residence [of Claimant]. I spoke to a female again who stated that he was out working on roofing jobs and that he was hard to get a hold of during the day because he traveled from job to job. She stated that the best time to get a hold of him during the day was between eleven a.m. and 1:30 p.m.

On November 7, 1992, which was a Saturday, I identified Thomas Capuano at his residence. I spoke to him at his door briefly and departed.

Q[uestion by Employer's attorney]. What was the substance of your conversations with him?

A[nswer]. I asked him about roofing, that I had seen his truck here before, and that my grandparents had a row home and were looking to get some roofing work done. Because I was new to the area, I didn't know anyone, just wanted to confirm that he was still in business.

Q. And did he confirm that to you?

A. Yes. He said he did roofing work.

R.R. at 231a. Again we find this to constitute substantial evidence to support the WCJ's determination that Claimant engaged in roofing work. Claimant contends that Mr.

King's testimony cannot constitute substantial evidence because

> At no time does it appear in the entry [of Mr. King's written surveillance report] of November 7, 1992 that Claimant acknowledged or admitted to doing roofing work. (R. 292a). In addition, after a review of all of the surveillance reports provided by Mr. King ... at not [sic] time is there an observation or entry that claimant is at an alleged job site, or conversing with alleged employees or performing roofing work. (R. 286 a–303a). In addition, Mr. King indicated that neither the Commonwealth of Pennsylvania or the City of Philadelphia had records concerning Capuano's Roofing. (R. 303a.).

Claimant's brief at pp. 14–15. Again, we find that Claimant's complaints regarding this testimony are complaints essentially premised on why Mr. King's testimony ought not to be given any weight. However, even conceding the accuracy of these alleged shortfalls in Mr. King's testimony, they go to the weight and credibility to be accorded his testimony, which are questions solely for the WCJ. They do not cause his testimony to fail to constitute substantial evidence.

Mr. Higgins, another investigator, also testified that he made a pretext call to Claimant's home number which was advertised on a sign on Claimant's truck which indicated "Capuano Roofing." R.R. at 100a. During this call, Mr. Higgins left a message on the answering machine requesting an estimate on roofing work. Mr. Higgins subsequently received a return call from Claimant, who indicated that he was willing to come out and give an estimate. R.R. at 103a–104a. Claimant complains inter alia, that Mr. Higgins did not include this information in his surveillance reports even though it was germane and should have been included in his report. See Claimant's brief at pp. 15–16. Again, Claimant's complaints regarding Mr. Higgins' testimony do not cause his testimony to fail to constitute substantial evidence. Rather, those complaints involve questions of credibility and weight, which are not reviewable by this court.

The next question Claimant raises is whether the Board erred by affirming the WCJ's decision modifying Claimant's benefits by imputing an earning to him which was not based upon substantial evidence? See Claimant's brief at p. 2. Claimant concedes that in order for a "modification to be granted, there must be a determination that either there was a change in claimant's physical condition, *Alpo Petfoods, Inc. v. WCAB (Neff)*, 663 A.2d 293, (Pa.Cmwlth.1995), *Walk v. WCAB (U.S.Air, Inc.)*, 659 A.2d 645 (Pa. Cmwlth.1995), or in his earnings or earning capacity, *Moore v. WCAB (Reading Paperboard Corp.)*, 652 A.2d 802 (Pa.Cmwlth. 1995)[sic, should be: 539 Pa. 333, 652 A.2d 802 (1995) ] and *Joy Technologies, Inc. v. WCAB (Heeter)*, [155 Pa.Cmwlth. 9] 624 A.2d 710 (Pa. Cmwlth 1993)." Claimant's brief at p. 18. Essentially, Claimant argues that Employer did not produce substantial evidence to carry its burden.

Specifically, herein, Claimant attacks the testimony of Ms. Moskoff who is a vocational case manager and who testified as an expert regarding, in effect, a change in Claimant's earnings and/or earning capacity. Primarily, Claimant complains that Ms. Moskoff's testimony regarding what an owner of a roofing company can earn (i.e., $50,000 annually) and that $1,200.00 is an average cost of a roofing job in South Philadelphia and that contractors do 2–3 jobs per week was hearsay and could not support any factual findings of the WCJ. Initially, we note that there was no objection to this testimony of Ms. Moskoff. Moreover, even if Claimant's contention is true, we note that the WCJ made no factual finding based upon this information but rather made a factual finding that Claimant had an imputed earning capacity of $28,000 annually as a self employed roofing contractor. F.F. Nos. 4 and 14. Ms. Moskoff testified that she was asked to do a wage survey for the position of roofing contractor by Employer's Insurer. In response to a question as to how she performed that survey, she stated that "[i]nitially, I looked up the information from the United States Department of Labor, which is offered by the Enhanced Guide for Occupational Exploration, and they – the research indicates that a salary level for 1993 for a roofing contractor would be twenty-eight thousand dollars per

year." R.R. at 321a. This is the precise amount of earning capacity for Claimant that the WCJ found Employer had proven. F.F. No. 14 and Conclusion of Law No. 1. Thus, Claimant's substantial evidence challenge to Ms. Moskoff's testimony regarding her conversations about how much an owner of a roofing contractor makes and how much it costs in South Philadelphia fails because this testimony does not appear to support any specific necessary finding of fact by the WCJ. The only evidence which the WCJ apparently relied upon to come to his determination that Claimant had an imputed earning capacity of $28,000 was Ms. Moskoff's testimony based upon the statistics and information compiled by the United States Department of Labor in its Enhanced Guide for Occupational Exploration publication. An expert may rely upon publications and information which is not admitted into evidence in order to form an opinion so long as the publications and information are of a type reasonably relied upon by experts in the particular field in forming their opinions. *Town and Country Management Corporation v. Zoning Hearing Board of Borough of Emmaus,* 671 A.2d 790 (Pa.Cmwlth.1996). Reliance by Ms. Moskoff in her testimony on a Department of Labor publication was not erroneous and such testimony could legitimately form the foundation for a finding of substantial evidence to support the WCJ's determination of Claimant's imputed earning capacity in the amount of $28,000 annually.

As to the remaining complaints of Claimant regarding Ms. Moskoff's testimony, as being incapable of sustaining a finding of substantial evidence in support of the WCJ's determinations, they fail for the same reasons Claimant's attacks upon the investigators' testimony fail, to wit, the attacks go to credibility and weight of Ms. Moskoff's testimony, questions solely for the factfinder. Claimant's own words reveal as much. Claimant explicitly states in his brief that "[t]he testimony and investigation of Ms. Moskoff was not credible." (Claimant's brief at p. 7 in his "statement of the case" section of his brief). The WCJ having determined otherwise, there is no recourse.

Claimant also complains that the evidence which Employer produced to carry its burden of proving a change in Claimant's circumstances and showing that Claimant was engaged in work did not rise to the level required by *Moore* and *Joy Technologies.* In those cases, evidence presented by the employers consisted of inter alia, video tapes of the recipient of compensation benefits actually working while contemporaneously receiving benefits, newspaper ads indicating that the recipient was operating a business, the recipient's federal tax returns showing recipient had derived an income from his business. Claimant argues that these cases "put forth the type of evidence which needs to be presented in order to grant a modification based on a change of earnings and earning capacity." (Claimant's brief at p. 23). Claimant argues because that kind of evidence was not produced in this case by Employer, the Employer did not prove a change in earnings or earning capacity.

■ Unfortunately for Claimant, *Moore* and *Joy* do not set forth an evidentiary threshold establishing the precise kinds of evidence required to prove a change in earnings or earning capacity. They provide merely examples of some of the kinds of evidence which would support a modification. Here, the testimony of the investigators establishing that Claimant was engaged in a roofing business combined with the testimony of Ms. Moskoff regarding the level of remuneration for such a job was competent and more than sufficient to carry Employer's burden to prove a change in earnings or earning capacity in order to merit a modification of benefits.

■ Lastly, Claimant argues that because he had returned to work with Employer from November 9, 1992 to May 7, 1993 and the WCJ determined that Claimant was self-employed as a roofing contractor as of October 1, 1992, Claimant was therefore "concurrently employed." According to Claimant, because income derived from self-employment may not be used in calculating workers' compensation benefits, any income earned by Claimant through his roofing business does not constitute wages for purposes of determining compensation payable and

therefore should not have been offset against his workers' compensation benefits in the form of a modification. In support of his contention, Claimant cites to *Borough of Honesdale v. Workmen's Compensation Appeal Board (Martin)*, 659 A.2d 70 (Pa. Cmwlth.1995), *allocatur denied*, 543 Pa. 698, 670 A.2d 144 (1995) and *Deichler v. Workmen's Compensation Appeal Board (Emhart/True Temper)*, 143 Pa.Cmwlth. 189, 598 A.2d 1030 (1992), *allocatur denied*, 530 Pa. 662, 609 A.2d 169 (1992). However, the essential issues in those cases was whether earnings from self employment constitute "wages" for the purposes of determining the average weekly wage in order to calculate the correct amount of benefits pursuant to Section 309 of the Worker's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582 and under that same section, whether a self employed individual is an "**employee** working under concurrent contracts." Those cases reasoned that 1) a self-employed individual cannot logically be an "employee" of themselves and therefore cannot constitute an "employee" working under concurrent contracts within the meaning of the statute and 2) that wages, by definition, are paid to an employee, and since a self-employed individual is not an "employee", the self-employed individual does not earn "wages" as such. The precise issue in this case is whether earnings from self-employment may be taken into consideration in determining a recipient's earnings or earning capacity for purposes of adjudicating a petition for modification. We find that such earnings from self-employment may indeed be taken into consideration for determining a recipient's earnings or earning capacity. *University of Pittsburgh v. Workers' Compensation Appeal Board (Johnson)*, 167 Pa. Cmwlth. 643, 648 A.2d 1315 (1994)(holding that income earned from self-employment by a recipient of Workers' Compensation benefits may be credited against the amount of benefits which the employer must pay).

Having found substantial evidence to support the WCJ's findings and having found no error of law committed by the WCJ, the order of the Board affirming the modification is affirmed.

### ORDER

AND NOW, this 5th day of February, 1999, the order of the Workers' Compensation Appeal Board, dated May 27, 1998 and docketed at No. A97–1211 is hereby affirmed.