# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

D&R Construction,      :
      Petitioner  :
           :
   v.       : No. 912 C.D. 2023
           : No. 913 C.D. 2023
Hector Suarez, Travelers Insurance : ARGUED: February 4, 2025
Company, Uninsured Employers  :
Guaranty Fund, and     :
T&L Development (Workers'   :
Compensation Appeal Board),   :
      Respondents

BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE MICHAEL H. WOJCIK, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**     **FILED:  April 28, 2025**

Petitioner, D&R Construction (D&R), petitions for review of the March 13, 2018 and July 26, 2023 orders of the Workers' Compensation Appeal Board. The Board's 2018 order reversed a decision of the Workers' Compensation Judge (WCJ) denying the claim petition of Claimant, Hector Suarez, finding that the WCJ erred in determining that Claimant was an independent contractor rather than an employee, and remanded to the WCJ for further proceedings.  The Board's 2023 order affirmed the WCJ's decision granting Claimant's claim petition against D&R, dismissing a claim petition against the Uninsured Employers Guaranty Fund (the Fund), and dismissing a joinder petition filed by D&R against T&L Development (T&L).  After careful consideration, we affirm both orders.

## I. Procedure and Background

### A. Claim Petitions and Initial WCJ Decision

It is undisputed that on August 28, 2010, while working at a hotel construction site, Claimant fell approximately three floors from scaffolding and suffered serious injuries, including a fractured pelvis and ankle. Claimant filed a claim petition under the Workers' Compensation Act (Act)[1] in October 2010, alleging that he sustained an injury in the course and scope of his employment with D&R. Certified Record (C.R.) at 14.[2] The claim petition listed Travelers Insurance Company as D&R's workers' compensation insurance carrier. *Id.* D&R filed an answer denying all material allegations and specifically averring that Claimant was not an employee of D&R but rather an independent contractor. C.R. at 36. In February 2011, Claimant filed a claim petition against the Fund containing the same allegations, as there was a dispute as to whether Travelers provided D&R with coverage in Pennsylvania at the time of Claimant's injury. *See* C.R. at 36; *see also D&R Constr. v. Workers' Comp. Appeal Bd. (Suarez)*, 167 A.3d 837, 839 n.1 (Pa. Cmwlth. 2017) (*en banc*) (*D&R I*). D&R subsequently filed a joinder petition against T&L in April 2011, alleging that T&L was the general contractor for the job on which Claimant was injured and, therefore, T&L was responsible for the payment of workers' compensation benefits, if owed. C.R. at 25, 36.

The parties agreed to bifurcate the case, with the WCJ to determine the threshold issue of whether Claimant was an employee or an independent contractor. C.R. at 36. If the WCJ found that Claimant was an employee, she would then determine whether he was injured in the course and scope of his employment and

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[2] Because the Certified Record was submitted electronically, the page numbers referenced throughout this opinion reflect electronic pagination.

2

whether the injury occurred as a result of a violation of a positive work order. *Id.* The issue of insurance coverage was deferred. *Id.*

Claimant testified before the WCJ that while he was living in Memphis, Tennessee, he had a telephone conversation with David Alcantara who was doing business as D&R. Mr. Alcantara offered Claimant a job in Pennsylvania working as a carpenter placing roof trusses. Claimant was expected to work 8-10 hours per day, 6 days per week, at a rate of $16.00 per hour. He started working in mid-August 2010. Claimant was also told that he and several other workers would be sharing a hotel room with Mr. Alcantara, at Mr. Alcantara's expense. C.R. at 36.

Mr. Alcantara drove Claimant to and from the work site every day as Claimant had no other means of transportation. According to Claimant, Mr. Alcantara determined when Claimant would take breaks and gave "specific instructions on what needed to be done on a daily basis," and Claimant "had no control of the jobs or tasks that needed to be completed." C.R. at 36. Claimant believed he worked for D&R. *Id.*

At the end of the day on August 28, 2010, Claimant was told to collect his tools by the job superintendent, Robert Wallace, because Mr. Alcantara was not at the job site that day. Claimant removed his safety harness and began to collect the tools, but inadvertently stepped on an area of the scaffold where a piece of wood was missing. Claimant fell approximately 24 feet and landed on his left side. He was taken to a local hospital and later life flighted to a trauma hospital in Pittsburgh, where he underwent multiple surgeries. He has not worked since the injury and receives Social Security Disability benefits. C.R. at 36-37, 72, 200.

Mr. Wallace was not present when Claimant fell as he left the job site to purchase beer for the crew at the end of the shift. Claimant maintained that the crew was not done cleaning up when Mr. Wallace left and that when Claimant "fell

he was taking care of the last details and making sure there were no tools left out[.]" C.R. at 37.

On cross-examination, Claimant confirmed that he received an Internal Revenue Service 1099 form (1099 form) from D&R rather than a W-2, and that no taxes were deducted from the wages he received. However, he believed that Mr. Alcantara would do the taxes at the end of the year. He agreed that he was a framing specialist or carpenter, not a general laborer, and that he was paid more per hour accordingly. He did not bring his own tools with him because he flew from Tennessee to Pennsylvania. Mr. Alcantara took Claimant to the store and purchased tools for him, with the understanding that he would pay Mr. Alcantara back. Claimant stated "that while Mr. Alcantara usually informed him of what to do on a certain day, he already knew what to do on the date he fell[.]" C.R. at 37.

Gonzales Suarez, Claimant's brother, testified that he worked with Claimant on the project here in Pennsylvania. Mr. Suarez stayed in the same hotel room with Claimant and Mr. Alcantara, and confirmed that Mr. Alcantara drove them to and from work. Mr. Alcantara told them what to do every day and provided their tools. C.R. at 38.

Mr. Suarez stated that at the time Claimant fell, he was in a room inside the hotel standing below Claimant who was outside on the scaffolding. Claimant was handing Mr. Suarez tools when he fell, but Mr. Suarez did not actually see Claimant fall. Mr. Suarez confirmed that Mr. Wallace had already left the job site to buy beer for the crew and they were putting away the remaining tools when the incident occurred. He also confirmed that Claimant was not wearing his safety harness at the time. C.R. at 38.

Mr. Alcantara testified that he resides in North Carolina and is the owner of D&R. In this position, he performed masonry work at the hotel in June

4

2010. Once the masonry work was completed, he began performing carpentry and framing work at the hotel for T&L. Mr. Alcantara was unable to complete all of the work himself, so he contacted a friend in Tennessee who recommended Claimant. Mr. Alcantara told Claimant that he would be paid $16.00 per hour and would be responsible for his own taxes at the end of the year. He did not pay for Claimant's transportation to Pennsylvania. Mr. Alcantara considered Claimant to be an independent contractor and hired him due to his skills as a framer/carpenter rather than a general laborer. C.R. at 38-39.

In terms of payment, T&L paid D&R for the services provided on the hotel project on an hourly basis, and D&R then paid Claimant and the other workers. Claimant did not have his own tools when he arrived from Tennessee; therefore, Mr. Alcantara loaned Claimant money to purchase tools and indicated that he would deduct the money from Claimant's pay. However, Claimant fell before receiving his first paycheck and Mr. Alcantara was never reimbursed for the tools. Mr. Alcantara explained that he had enough tools to lend to Claimant so that he could perform his duties as a carpenter, but "the deal" was that Claimant was to use his own tools. C.R. at 39.

Mr. Alcantara confirmed that Claimant shared his hotel room and that they rode to and from work together on a daily basis. According to Mr. Alcantara, he did not dictate when Claimant began work or when he could leave the job site each day. However, Mr. Alcantara acknowledged that he was Claimant's only source of transportation. Mr. Suarez also came to work on the project, but he did not have carpentry skills. Mr. Suarez quit after learning that he would only be paid general laborer wages and not carpenter wages. C.R. at 39.

Mr. Wallace testified that he began working as a construction manager for T&L at the hotel site in March 2010. He was not an employee of T&L, and he

5

received a 1099 form. It was Mr. Wallace's responsibility to keep the job moving along smoothly and to inform the separate contractors what their particular job was on the site. Mr. Wallace confirmed that he did not pay Claimant directly; rather, Mr. Alcantara submitted daily timesheets to T&L for the individuals on his crew and then T&L paid D&R for the total hours worked. C.R. at 40-41.

The day of the incident, Mr. Wallace worked alongside Mr. Alcantara's crew felting the roof from 7:00 a.m. to 3:30 p.m. Everyone working on the roof that day would have been wearing a safety harness because it was required for that type of work. According to Mr. Wallace, the only tools necessary to lay a felt roof are a hammer, nails, and a knife. At the end of the shift the felting was not finished, so the workers descended from the roof at the same time and locked all of the tools, including the safety harnesses, in the tool room. Mr. Wallace then left the site to buy the crew a case of beer, and they were all standing in the parking lot on the other side of the building when he left. Mr. Wallace specifically denied asking Claimant or anyone else to clean up the tools and stated that, because the tools were already locked up, there was no reason to return to the roof. When Mr. Wallace returned to the job site, Claimant had already fallen. There were no tools on the roof when Mr. Wallace returned, and Claimant was not wearing a safety harness at the time he fell. C.R. at 40.

Mr. Wallace explained that Mr. Alcantara was not able to decide on his own to felt the roof; rather, Mr. Wallace informed him what work the crew needed to complete. Mr. Wallace also told Mr. Alcantara not to bring back several workers because they were caught stealing materials. C.R. at 41.

The WCJ issued a decision and order on January 31, 2013, finding that Claimant was an independent contractor rather than an employee, and thus denying his claim petition against D&R. The WCJ further held that even if Claimant was an

6

employee of D&R, his injury occurred as a result of his violation of a positive work order—namely, not wearing a safety harness—and therefore was not sustained in the course and scope of his employment. The claim petition against the Fund and D&R's joinder petition against T&L were also dismissed. C.R. at 43-44.

In rendering her decision, the WCJ accepted as credible and persuasive the testimony of Mr. Alcantara and Mr. Wallace. She found the following facts relevant to the determination: Claimant was told he would be paid an hourly rate and would be responsible for his taxes at the end of the year; he was issued a 1099 form; and he was responsible for his own tools and because he could not bring them on his flight, he was to reimburse Mr. Alcantara for their purchase. C.R. at 41-42. As the WCJ explained,

> [i]t is clear from the testimony of Mr. Alcant[a]ra and from [C]laimant that he was a professional carpenter/framer and did not need to be told how to perform his job duties. This [WCJ] does not find the fact that Mr. Alcant[a]ra had to inform [C]laimant of what specific job needed to be done on a particular day establishes that he had "control" over the manner in which [C]laimant performed his work[.]

C.R. at 42. The WCJ found that Mr. Wallace's testimony established he did not control how Claimant performed his duties either. She specifically found credible Mr. Wallace's testimony: that he did not order Claimant or Mr. Suarez to return to the roof to clean up tools, or for any other reason; that when Mr. Wallace left the job site Claimant and the other workers were in the parking lot; that there would be no reason to remove the ropes from the roof until the entire project was completed; and that the ropes remained tied to the roof and Claimant's tool belt remained locked in the tool room when Mr. Wallace returned. C.R. at 42-43.

The WCJ found the testimony of Claimant to be credible in part,[3] specifically: that he was performing carpenter duties which required more skills than a laborer; that Mr. Alcantara purchased tools for him with the agreement that he would pay back Mr. Alcantara; and that Claimant was provided with a 1099 form and no taxes were deducted from his pay. The WCJ rejected Claimant's testimony pertaining to his allegations that he was an employee of D&R. Based upon the credible testimony of Mr. Wallace, the WCJ found that when Claimant went back into the building, his shift was over, "he was off of [sic] duty and in no way was furthering the interests of D&R[.]" C.R. at 43. Finally, she found "that when [C]laimant returned to the roof, for whatever reason, he was not wearing a safety harness which was clearly in violation of a positive work order to wear the same when working on or around the roof." *Id.*

## B. Prior Board Decision and *D&R I*

Claimant appealed to the Board, specifically challenging all four conclusions of law as well as the WCJ's finding of fact number six pertaining to the resolution of the conflict of evidence and the credibility determinations. C.R. at 46. His appeal form further alleged that the decision is not reasoned and that the WCJ erred as a matter of law in determining that he was an independent contractor and was not in the course and scope of employment at the time of his injury. *Id.*

The Board issued an opinion and order dated July 6, 2016, finding that the WCJ erred in determining that Claimant was an independent contractor, therefore reversing the WCJ's order and remanding for further proceedings on the merits, including the joinder petition. C.R. at 70, 84. Notably, the Construction Workplace

---

[3] The WCJ rejected the testimony of Mr. Suarez, noting that it was illogical and conflicted with Claimant's testimony.

Misclassification Act (CWMA)[4] was enacted on October 13, 2010, with an effective date of February 10, 2011. The Board acknowledged that the CWMA did not become effective until approximately six months after Claimant's accident. C.R. at 78. Nonetheless, it found "the factors contained therein to be instructive in determining how to evaluate the present matter," describing the CWMA "as a clarification of the traditional test for establishing an employment relationship[.]" *Id.* The Board did "note that even under a traditional common law analysis, [] Claimant would properly be considered an employee under the facts in this case." C.R. at 79. The Board noted that the most important factor under the common law analysis is control of the work and the manner in which it is performed, which here pointed to Mr. Alcantara and D&R. C.R. at 79-80. The Board also determined that the WCJ erred in finding that Claimant was not in the course and scope of his employment because he violated a positive work order by failing to wear his safety harness. C.R. at 80.

Both D&R and the Fund filed applications requesting that the Board amend its order to include language from Section 702(b) of the Judicial Code, 42 Pa.C.S. § 702(b), regarding an immediate appeal from the interlocutory order, which the Board denied. This Court subsequently granted, in part, the petitions for

---

[4] Act of October 13, 2010, P.L. 506, 43 P.S. §§ 933.1-933.17. The CWMA provides guidance on the proper classification of individuals working within the construction industry. *Dep't of Lab. & Indus. v. Workers' Comp. Appeal Bd. (Lin & E. Taste)*, 187 A.3d 914, 924 (Pa. 2018). It sets forth specific "criteria which must be established in order for an individual in the construction industry to be deemed an independent contractor and not an employee for purposes of workers' compensation." *D&R I*, 167 A.3d at 842. *See also* Section 3(a) of the CWMA, 43 P.S. § 933.3(a).

9

permission to appeal filed by D&R and the Fund pursuant to Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1311(b).[5]

Following briefing and argument *en banc*, the Court in *D&R I* held "that the CWMA cannot be applied retroactively in workers' compensation matters to determine whether an individual is an employee or an independent contractor." *D&R I*, 167 A.3d at 843. Moreover, "the CWMA may not be used as guidance for the application of the traditional factors under the common law to determine whether an employment relationship existed." *Id.* at 845. As the *D&R I* Court explained,

> [w]e note the Board stated that even under the traditional common law analysis, Claimant would be considered an employee under the facts of this case. Because we are not confident that the Board was not predisposed to such a finding given its aforementioned analysis, we remand the matter to the Board to address whether Claimant sustained his burden of proving an employer-employee relationship solely under the traditional factors set forth in the common law.

*Id.* Further, "[i]f the Board determines that Claimant was an employee, it shall address the remaining issues that were raised by the parties on appeal from the WCJ's order." *Id.* at 845 n.17.

### C. Decisions Following Remand

On March 13, 2018, the Board issued an opinion and order reversing the WCJ's decision and remanding for further proceedings. C.R. at 147-61. Using the traditional common law test, the Board again found that the WCJ erred in determining that Claimant was an independent contractor rather than an employee.

---

[5] This Court's order granting, in part, the petitions limited the issues on appeal to whether the Board erred in retroactively applying the CWMA to determine whether Claimant was an independent contractor; and whether the Board erred by considering the CWMA as guidance for the application of the common law analysis to determine who qualifies as an independent contractor. *D&R I*, 167 A.3d at 840-41.

C.R. at 158. The Board explained that D&R, through Mr. Alcantara, had control of the work and the manner in which it was performed, which is the most important factor under the common law test. *See Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328 (Pa. 2000). In support of its analysis, the Board cited the following facts: D&R paid Claimant an hourly rate and paid for his hotel room; Mr. Alcantara drove Claimant to and from the job site every day; Claimant had no say in the hours he worked if he wanted a ride; and both Mr. Alcantara and Mr. Wallace specifically testified that they told Claimant what to do on the job site. C.R. at 158.

The Board also reiterated its prior holding that the WCJ erred in determining that Claimant was not furthering D&R's affairs when he returned to the roof and that he violated a positive work order by failing to wear his safety harness. C.R. at 159-60. The Board instructed the WCJ to consider D&R's joinder petition on remand because it was no longer moot. C.R. at 160.[6]

Following remand, the WCJ issued a decision on September 13, 2021, finding that Claimant was an employee of D&R because that entity had the right to control Claimant's work and the manner in which it was done, and that D&R had a workers' compensation insurance policy through Travelers that was in effect and covered Pennsylvania at the time of Claimant's injury. C.R. at 208, 211. The WCJ also rejected D&R's argument that Claimant was a borrowed employee at the time of the incident. Thus, the WCJ granted Claimant's claim petition against D&R, and dismissed the claim petition against the Fund and the joinder petition against T&L. C.R. at 212. In addition to her previous factual findings and credibility

---

[6] D&R, Travelers, and T&L each filed petitions for review with this Court from the Board's March 2018 opinion and order. The petitions were quashed as interlocutory and not immediately appealable pursuant to Pa.R.A.P. 311(f) because the Board's remand involved the exercise of discretion.

11

determinations, the WCJ noted that the testimony of both Mr. Wallace and T&L's attorney, John Toohey, Esquire, established that Mr. Wallace was not an employee of T&L as that entity never had any employees. C.R. at 203-04, 208. In short, T&L did not and could not control the work to be done by Claimant. C.R. at 208.

Both D&R and Travelers appealed, and the Board issued a single opinion and order on July 26, 2023, affirming the WCJ's decision. C.R. at 342-70. D&R's petition for review[7] to this Court followed.[8]

## II. Discussion

The issues D&R raises on appeal can be paraphrased as follows: (1) whether the Board erred in reversing the WCJ's determination that Claimant was an independent contractor; (2) whether the WCJ erred in concluding that Claimant was an employee of D&R, rather than T&L, at the time of his injury; (3) whether the WCJ erred in rejecting D&R's argument that Claimant was a borrowed employee; (4) whether Claimant preserved the issue regarding violation of a positive work order; and (5) whether the Board erred in reversing the WCJ's conclusion that Claimant was not in the course and scope of his employment at the time of his injury because he violated a positive work order. We will begin with the first two issues, as they are intertwined.

### A. Employee or Independent Contractor

To prevail on a claim petition, a claimant must establish all of the necessary elements, including the existence of an employment relationship and that he sustained an injury in the course of his employment. *Edwards v. Workers' Comp.*

---

[7] Travelers did not file a petition for review to this Court; therefore, the issue of whether Travelers provided D&R with workers' compensation insurance coverage in Pennsylvania at the time of Claimant's injury has been waived. *See* Travelers' Feb. 26, 2024 Appl. at 2.

[8] Both the Board and this Court denied D&R's requests for supersedeas.

12

*Appeal Bd. (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1162 (Pa. Cmwlth. 2016). Employment status is critical as independent contractors cannot recover benefits under the Act. *See Am. Road Lines v. Workers' Comp. Appeal Bd. (Royal)*, 39 A.3d 603, 610 (Pa. Cmwlth. 2012); Sections 103 and 104 of the Act, 77 P.S. §§ 21-22.

While there is "no hard and fast rule" as to when an employment relationship exists, *Hammermill Paper Company v. Rust Engineering Company*, 243 A.2d 389, 392 (Pa. 1968), our Supreme Court has set forth the following factors that should be taken into consideration under the traditional common law test:

> Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one is engaged in a distinct occupation or business; which party supplied the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time.

*Minteer*, 762 A.2d at 333 (quoting *Hammermill*, 243 A.2d at 392). No one factor is dispositive, but the key factor that has emerged "is whether the alleged employer had the right to control the work to be done, and the manner in which work is performed." *Royal*, 39 A.3d at 611. *See also Minteer*, 762 A.2d at 333. "Moreover, it is the existence of the *right* to control that is significant, irrespective of whether the control is actually exercised." *Minteer*, 762 A.2d at 333 (emphasis in original).

The existence of an employment relationship is a question of law to be determined based on the unique facts presented in each case. *Royal*, 39 A.3d at 610. Nevertheless, we are cognizant that this inquiry "depends heavily on the WCJ's underlying credibility and factual determinations." *Berkebile Towing & Recovery v. Workers' Comp. Appeal Bd. (Harr)*, 254 A.3d 783, 793 (Pa. Cmwlth. 2021); *see also id.* at 790-91 ["As an appellate court . . . we are bound by the WCJ's authority

13

over questions of credibility, conflicting evidence, evidentiary weight determinations, and findings of fact." (citing *Edwards*, 134 A.3d at 1161)].

D&R argues that the WCJ's initial determination that Claimant was an independent contractor and not an employee at the time of his injury is supported by substantial, competent, and credible testimony of record, and therefore the Board erred by reversing the WCJ's decision on this issue. D&R stresses that the WCJ found the testimony of Mr. Alcantara and Mr. Wallace to be credible, especially regarding the issue of Claimant's employment status. The WCJ also specifically found Claimant's testimony *not* to be credible with respect to his allegations that he was an employee. As this Court noted in remanding the matter to the Board, the WCJ's credibility findings "must be upheld and applied even if the record contains evidence to support findings other than those made by the WCJ." *D&R I*, 167 A.3d at 845 n.17. Further, in assessing the legal conclusions of the WCJ and determining whether they are supported by substantial evidence, the Board was required to view the evidence in a light most favorable to D&R as the party who prevailed before the fact finder. *See Capuano v. Workers' Comp. Appeal Bd. (Boeing Helicopter Co.)*, 724 A.2d 407 (Pa. Cmwlth. 1999). D&R maintains that the Board erred in both respects.

D&R ultimately asserts that the credible evidence of record shows that neither it, nor T&L for that matter, controlled the manner in which Claimant's work was performed, which is the most important factor under the common law standard. The WCJ credited the testimony that Claimant was a professional carpenter/framing specialist who knew how to perform the assigned work, and that Mr. Alcantara only advised Claimant what generally needed to be done on a given day, not the manner in which the job needed to be performed. According to D&R, the other factors also support the WCJ's determination, including: that Claimant was given a 1099 form;

14

that he was brought to the job site because of his specialized skill and training as a carpenter; that the carpenters were compensated more than general laborers; that Claimant arranged his own transportation from Tennessee to Pennsylvania for this project; and that Claimant was expected to supply his own tools and borrowed money from Mr. Alcantara to purchase tools when he arrived without them.

While this is a close case, we find that the Board did not disregard the WCJ's credibility determinations, invade the province of the WCJ, or misapply the common law factors in assessing the employer-employee relationship. To the contrary, the Board used the testimony of the witnesses that the WCJ found credible in applying the common law analysis and correctly determined that Claimant was an employee rather than an independent contractor at the time of his injury. The Board properly focused on the control of the work and manner in which it is performed. The testimony of Mr. Alcantara and Mr. Wallace—which the WCJ found to be credible—is that Mr. Alcantara had the ability to hire and fire employees, not Mr. Wallace; that Mr. Alcantara told Claimant what specific job to do each day; that Claimant was responsible for cleaning up tools at the end of the day; that Mr. Alcantara provided lodging and transportation to and from the work site; that Mr. Alcantara admitted that Claimant had to adhere to his work schedule, including when he could take breaks; and that Claimant was paid at an hourly rate. Notably, even though he did not tell Claimant exactly how to perform his job each day, Mr. Alcantara admitted to having the *ability* to control Claimant's work and the manner in which it was performed. *See Minteer*, 762 A.2d at 333 ("it is the existence of the *right* to control that is significant, irrespective of whether the control is actually exercised"). These facts, as a whole, point to the exercise of control by D&R, through Mr. Alcantara, and that Claimant was therefore an employee of D&R at the time of his injury. Again, while this case may be close, our Supreme Court has

15

cautioned that "neither the compensation authorities nor the courts should be solicitous to find contractorship rather than employment, and that inferences favoring the claim need make only slightly stronger appeal to reason than those opposed." *Berkebile Towing*, 254 A.3d at 790 (quoting *Minteer*, 762 A.2d at 330).

## B. <u>Borrowed Employee</u>

Like the common law standard regarding the employment relationship,

> [t]he test for determining whether [an employee] furnished by one person to another becomes the employee of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it.

*JFC Temps, Inc. v. Workmen's Comp. Appeal Bd. (Lindsay)*, 680 A.2d 862, 864 (Pa. 1996). Again, it is the right to control the manner of the work that is important, regardless of whether that control is actually exercised. *Id.* Other factors that may be relevant include the right to hire and fire the claimant, the skill or expertise required to perform the work, and the payment of wages. *Id.*

D&R argues that even if it had been Claimant's employer and at one time maintained the right to control his work performance, that right to control passed to T&L on the day of Claimant's injury. This argument lacks merit for the reasons outlined above. The fact that Mr. Alcantara was not on the premises on the day Claimant fell does not automatically equate to control being passed to T&L simply because Mr. Wallace was present. In addition, Mr. Wallace was not an employee of T&L, but was the general contractor on this project, brought in to essentially manage the subcontractors. The credible evidence of record supports the finding that D&R retained control and, therefore, the WCJ did not err in rejecting D&R's borrowed employee argument.

Course of Employment and Violation of a Positive Work Order

D&R first argues that Claimant waived the issue of whether he violated a positive work order because he failed to raise it in his initial appeal of the WCJ's January 2013 decision. However, Claimant's initial appeal challenges finding of fact number six pertaining to the WCJ's credibility determinations and resolutions of conflicts in the evidence, and specifically claims that the WCJ erred in determining that Claimant was not in the course of his employment when he fell. C.R. at 46. Violation of a positive work order is explicitly tied to the issue of whether the injury occurred in Claimant's course of employment. *See Johnson v. Workers' Comp. Appeal Bd. (Union Camp Corp.)*, 749 A.2d 1048, 1051 (Pa. Cmwlth. 2000). Thus, we find that Claimant properly preserved the issue of violation of a positive work order.

There is a three-prong test for denying benefits to a claimant injured as a result of disobeying an employer's order, with the criteria being: (1) the claimant's injury was, in fact, caused by the violation of a positive work order; (2) the claimant knew of the order before the date of the injury; and (3) the order "implicated an activity not connected with the [claimant]'s work duties[.]" *Camino v. Workers' Comp. Appeal Bd. (City Mission)*, 796 A.2d 412, 417 (Pa. Cmwlth. 2002) [quoting *Nevin Trucking v. Workmen's Comp. Appeal Bd. (Murdock)*, 667 A.2d 262, 268 (Pa. Cmwlth. 1995)]. "[T]o be ineligible for benefits, the [claimant] must not only have been injured while in violation of an order, but must have been engaged at the time of injury in an activity so disconnected with his [] regular duties as to be considered, with respect to the employer, nothing more than a 'stranger' or 'trespasser.'" *Camino*, 796 A.2d at 418. As this Court has stressed, denying benefits based on the violation of a positive work order is "the very rare exception to the broad general principle that all injuries sustained by [a claimant] arising in the course of his or her

employment and causally related thereto are compensable[.]" *Id.* [citing *U.S. Airways v. Workers' Comp' Appeal Bd. (Dixon)*, 764 A.2d 635 (Pa. Cmwlth. 2000)].

Under Section 301(c)(1) of the Act, 77 P.S. § 411(1), a claimant's injury may be sustained "in the course of employment"

> in two distinct situations: (1) where the [claimant] is injured on or off the employer's premises, while actually engaged in furtherance of the employer's business or affairs; or (2) where the [claimant], although not actually engaged in the furtherance of the employer's business or affairs, (a) is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on, (b) is required by the nature of his employment to be present on the employer's premises, and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon.

*Dixon*, 764 A.2d at 640 [citing *Hemmler v. Workmen's Comp. Appeal Bd. (Clarks Summit State Hosp.)*, 569 A.2d 395 (Pa. Cmwlth. 1990)]. "The phrase 'actually engaged in the furtherance of the business or affairs of the employer' is given a liberal construction." *Camino*, 796 A.2d at 418.

Here, we find that the Board correctly determined that the WCJ erred in finding that Claimant was not furthering D&R's affairs when he returned to the roof and that he violated a positive work order when he failed to wear his safety harness. Beginning with the second issue, Mr. Wallace, whose testimony was accepted as credible, admitted that the workers were allowed to take off their safety harnesses when they were on the scaffolding. Thus, the fact that Claimant was not wearing his safety harness at the time he fell from the scaffolding, in and of itself, does not establish that he violated a positive work order. Unlike other cases where the claimant was found to be in violation of the employer's work order, Claimant here "was not injured while engaged in a matter of personal convenience or interest."

18

*Camino*, 796 A.2d at 419 [citing *Johnson*; *Nevin Trucking*; *Dickey v. Pittsburgh and Lake Erie R.R. Co.*, 146 A. 543 (Pa. 1929)].

More importantly, at the time he fell, Claimant was on the scaffolding attempting to retrieve tools from the roof, or at the very least ensure there were no tools left on the roof overnight. The record establishes that this was part of Claimant's daily job duties. The incident also took place on the worksite shortly after Claimant's workday had ended. In sum, it simply cannot be said that at the time of his injury, Claimant was engaged in an activity so disconnected with his regular duties as to be considered nothing more than a stranger or trespasser. *Camino*, 796 A.2d at 418-19.

For all of the above reasons, we affirm the orders of the Board.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

D&R Construction,                    :

                 Petitioner   :

                                :

            v.                :   No. 912 C.D. 2023

                                :   No. 913 C.D. 2023

Hector Suarez, Travelers Insurance  :

Company, Uninsured Employers     :

Guaranty Fund, and                  :

T&L Development (Workers'        :

Compensation  Appeal Board),     :

               Respondents

# **O R D E R**

AND NOW, this 28th day of April, 2025, the March 13, 2018 and July 26, 2023 Orders of the Workers' Compensation Appeal Board are AFFIRMED.

 

 

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita